EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

GERARD OUIMETTE

v. CA No. 99-489-T

UNITED STATES OF AMERICA

**MEMORANDUM AND ORDER**

Ernest C. Torres, Chief Judge.

Gerard Ouimette has filed a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255. For the reasons that follow, the motion is denied.

**Background**

A jury found Ouimette guilty of one count of conspiracy to collect extensions of credit by extortionate means, a violation of 18 U.S.C. § 894, and two counts of aiding and abetting the collection of extensions of credit by extortionate means, violations of 18 U.S.C. §§ 2 and 894. On each of the three counts, Ouimette was sentenced to concurrent terms of life imprisonment without parole pursuant to the "three strikes" provision of 18 U.S.C. § 3559(c)(1)(A). Following denial of his direct appeal and his petition for certiorari, United States v. DeLuca, 137 F.3d 24 (1st Cir.), cert. denied, 525 U.S. 917 (1998), Ouimette filed the instant § 2255 motion.

Although Ouimette's motion was not received by the Court until



18

more than one year after the Supreme Court denied certiorari, the government, apparently does not dispute that the motion was deposited in the prison mail system within the one-year limitation period specified by § 2255 and; therefore, was timely filed. See Morales-Rivera v. United States, 184 F.3d 109 (1st Cir. 1999) (motions pursuant to 28 U.S.C. § 2254 and 2255 considered filed when deposited in prison's mail system).

In his motion, Ouimette makes numerous claims as to why his sentence should be vacated. Many of those claims do not rise to the level of constitutional violations or other violations that would be cognizable under § 2255. The claims may be grouped into six categories:

1. Insufficiency of the indictment
2. Prosecutorial misconduct
3. Witness issues
4. Erroneous jury instructions
5. Sentencing errors
6. Ineffective assistance of counsel.

The first five claims will be referred to collectively as the claims of "trial errors."

Several weeks after his motion was filed and after the one-year limitation period set forth in § 2255 had expired, Ouimette sought to "supplement" his § 2255 motion by adding claims (the "supplemental claims") that James "Slugger" Gellerman, a government

witness, testified falsely at trial; and that Bobby Jo Dumont, another government witness, was coerced by the government into giving false testimony before the grand jury.

**Discussion**

I. The "Supplemental Claims"

Since Ouimette's supplemental claims, in effect, sought to amend his § 2255 motion, they are governed by Rule 15 of the Federal Rules of Civil Procedure. United States v. Barrett, 178 F.3d 34, 46 (1st Cir. 1999), cert. denied, 528 U.S. 1176 (2000). Accord, United States v. Thomas, 221 F.3d 430 (3rd Cir. 2000). Thus, whether those claims are time barred turns on whether they "relate back" to the date on which Ouimette's § 2255 motion was filed.

The "relation back" of amendments to pleading is governed by R. 15(c) which provides:

> (c) Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when
>
> (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
>
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading
>
> * * *

Since subsection (c)(1) does not apply to § 2255 motions, Davenport v. United States, 217 F.3d 1341, 1344 n.7 (11th Cir.

2000), cert. denied, ___ U.S. ___, 121 S.Ct. 1232 (2001), the issue, in this case, is whether Ouimette's supplemental claims arise out of the "conduct, transaction or occurrence" set forth in his original motion. An amendment to a § 2255 motion does not "relate back" if it "add[s] new claims or . . . insert[s] a new theory into the case." Thomas, 221 F.3d at 431. In order to "relate back," an "untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings." Davenport, 217 F.3d at 1344. Accord, United States v. Pittman, 209 F.3d 314 (4th Cir. 2000); United States v. Duffus, 174 F.3d 333 (3rd Cir.), cert. denied, 528 U.S. 866 (1999); United States v. Craycraft, 167 F.3d 451 (8th Cir. 1999). Otherwise, amendments "would be tantamount to judicial rescission of [§ 2255's] statute of limitations period." United States v. Espinoza-Saenz, 235 F.3d 501, 505 (10th Cir. 2000) (citing Pittman, 209 F.3d at 318).

Neither of Ouimette's two supplemental claims arise out of the same "conduct, transaction or occurrence" as the claims made in his initial § 2255 motion. Both supplemental claims do more than simply clarify or amplify the claims contained in the initial § 2255 motion. They present new claims that are distinct from and unrelated to the original claims. Thus, the supplemental claims are barred by the one-year statute of limitations imposed by § 2255.

II. The Original Claims

Since the claims of "trial error" were not raised on appeal, Ouimette is procedurally barred from making those claims, now, unless he establishes either "cause" excusing that failure and "prejudice" resulting from it; or, alternatively, that he is "actually innocent." E.g., Brache v. United States, 165 F.3d 99, 109 (1st Cir. 1999) (quoting Murray v. Carrier, 477 U.S. 478, 485, 496 (1986)).

The ineffective assistance claims are not procedurally barred because, ordinarily, such claims cannot be raised on appeal. Knight v. United States, 37 F.3d 769, 774 (1st Cir. 1994). In order to prevail on an ineffective assistance claim, a defendant must establish: (1) that the attorney's representation fell below an objective standard of reasonableness; and (2) that the defendant was prejudiced by counsel's deficient performance. Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).

A. Adequacy of Representation

In this case, the two classes of claims overlap because Ouimette's "cause" for not raising his "trial error" claims on appeal appears to rest on the suggestion such failure was attributable to counsels' deficient performance.

A petitioner bears the burden of identifying the specific acts or omissions that constitute counsels' allegedly deficient performance. See Lema v. United States, 987 F.2d 48, 51-52 (1st

Cir. 1993). See also Barrett v. United States, 965 F.2d 1184, 1186 (1st Cir. 1992). It is not enough to present bald assertions or unsupported conclusions. See David v. United States, 134 F.3d 470, 477 (1st Cir. 1998).

The adequacy of counsel's performance is evaluated "in light of the circumstances as they existed at the time of trial." Strickland, 466 U.S. at 689. The standard applied is a highly deferential one. "[The] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'." Id. (quoting Michael v. Louisiana, 350 U.S. 91 (1955)). The attorney's judgment need not be right so long as it is reasonable. United States v. McGill, 11 F.3d 223, 227 (1st Cir. 1993).

B. The Alleged "Trial Errors"

Obviously, counsel cannot be branded deficient for failure to pursue claims that lack merit. See United States v. Cronic, 466 U.S. 648, 656 n.19 (1984) (right to effective assistance of counsel does not require the "useless charade" of presenting a meritless defense.) Therefore, in determining whether Ouimette's failure to raise his "trial error" claims on appeal is excused by counsels' allegedly substandard performance, the threshold question is whether there is any merit to those claims. In each case, the

answer is no. Therefore, Ouimette has not satisfied even the first prong of the Strickland test.

(1) Sufficiency of the Indictment

Ouimette claims that the indictment was deficient in two respects. First, he argues that Count I, which charged conspiracy to collect extensions of credit by extortionate means, did not provide sufficient notice of the crime charged and that Counts III and V, each of which charged collection or attempted collection of extensions of credit by extortionate means, failed to adequately recite the facts underlying those charges. Second, Ouimette argues that Counts III and V failed to apprise him that he, also, was charged with aiding and abetting the offenses described in those counts.

An indictment satisfies an accused's right to be informed of the nature of the accusation against him if it recites sufficient facts and describes the offense charged with enough particularity that the accused is able to prepare a defense. United States v. Serino, 835 F.2d 924, 929 (1st Cir. 1987) (quoting Hamling v. United States, 418 U.S. 87, 117 (1974)).

In this case, the indictment easily passes that test. Ouimette's claim of inadequate notice, apparently, is based on the redacted version of the indictment that was provided to the jury for its use during deliberations and not on the actual indictment. In order to avoid any unfair prejudice to the defendants, the

redacted indictment omitted approximately 1 ½ pages of overt acts that were alleged in the actual indictment. Those allegations were more than enough to inform Ouimette of the charges against him and the basis for them. The same is true with respect to the aiding and abetting charges contained in Counts III and V. Those counts expressly allege violations of 18 U.S.C. § 2 which defines the offense of aiding and abetting. That explicit reference was enough to apprise Ouimette that he had been charged with aiding and abetting. Indeed, "aiding and abetting is an alternative charge in every count, whether explicit or implicit." United States v. Oreto, 37 F.3d 739, 751 (1st Cir. 1994).

Since there is no merit to Ouimette's claims that the indictment was flawed, counsels' failure to raise those claims at trial or on appeal was not objectively unreasonable. See United States v. Cronic, supra.

(2) Prosecutorial Misconduct

Ouimette cites what he claims were several instances of prosecutorial misconduct during his trial. These claims require little discussion because they rest, almost entirely, on inaccurate or unsupported assertions.

For example, Ouimette claims that the prosecutor improperly vouched for the credibility of James Gellerman, a key government witness, by giving the impression to the jury that the Court and government were guaranteeing the truthfulness of Gellerman's

testimony. That claim is based on the presentation of evidence regarding a plea agreement under which the government promised to recommend a more lenient sentence in exchange for truthful testimony by Gellerman. The mere fact that the plea agreement was admitted into evidence and that testimony was elicited establishing Gellerman's understanding of the requirement that he testify truthfully did not amount to impermissible vouching. "It is not error to inform a jury of the contents of a plea agreement, nor is it improper for the government to call attention to a witness' motivation for testifying." United States v. Dockray, 943 F.2d 152, 156 (1st Cir. 1991) (citing United States v. Sutherland, 929 F.2d 765, 775-76 (1st Cir. 1991)); United States v. Munson, 819 F.2d 337, 344-45 (1st Cir. 1987); and, United States v. Martin, 815 F.2d 818, 821-23 (1st Cir. 1987)).

Ouimette also claims that the government failed to disclose a cooperation agreement that it had with Paul Calenda, one of the extortion victims, that would have required Calenda to testify at trial. The government denies that any such agreement existed and Ouimette has failed to proffer any evidence that such an agreement existed.

Finally, Ouimette claims that the government failed to correct what it knew to be false testimony by Paula Coppola, another government witness, regarding several matters unrelated to the charges against Ouimette. Once again, Ouimette has not

established, or even presented any evidence, that Coppola's testimony was false or that the government knew it. Indeed, at trial, Ouimette had ample opportunity to challenge Coppola's testimony and, in his memorandum, Ouimette acknowledges that his trial counsel did a very effective job of attacking Coppola's credibility.

(3) <u>Prejudicial Comments</u>

Next, Ouimette claims that he was denied his due process right to a fair trial because he was unfairly prejudiced by comments made by Coppola and by the government's failure to call Robert Buehne as a witness after the prosecutor had referred to Buehne in his opening statement.

Coppola's comments consisted of references to a brief liaison she had with Ouimette "after he got out of jail"; an unsuccessful attempt to telephone him the following June "after he went back to jail" and a statement that a late night visit by Ouimette shortly after her husband's death caused her to fear for her safety.

The comments were nothing more than passing references made by Coppola in an effort to fix the time at which certain events occurred. Once those comments were made, counsel was confronted with a difficult tactical decision. Since it is unlikely that those comments would have warranted a mistrial, counsel had two choices. He could move to strike the statements and ask for a cautionary instruction thereby running the risk of calling undue

attention to the comments.[1] Alternatively, he could "let sleeping dogs lie" and focus the jury's attention on the issues on the case. Under the circumstances, it cannot be said that counsel's decision was an unreasonable one. In any event, given the weight of the other evidence against Ouimette, it is difficult to see how Ouimette was prejudiced by counsel's decision.

It is even more difficult to see how Ouimette's counsel could be faulted for the government's failure to call Buehne as a witness. As already noted, Ouimette bears the burden of identifying the specific acts or omissions that constitute counsel's allegedly deficient performance. See Lema, supra. However, Ouimette has failed to explain what, if anything, he contends that counsel could have or should have done to force the government to call Buehne as its witness.

Nor has Ouimette demonstrated that he was prejudiced by the government's failure to call Buehne. There is no indication that Buehne's testimony would have been favorable to Ouimette and the limited references made in the government's opening statement to Buehne's involvement in the events underlying the charges against Ouimette were amply supported by the testimony of other witnesses.

If Ouimette's claim is that counsel should have pursued the matter by requesting a "missing witness" instruction, the answer is

---

[1]During the charge conference, the Court inquired as to whether the defense sought an instruction on the subject. Defense counsel stated that he did not. Tr. (10/24/95) at 28-29.

that counsel did so. However, this Court denied that request and the First Circuit affirmed on the ground that Buehne's testimony would have been merely cumulative. DeLuca, 137 F.3d at 38.

(4) Jury Instructions

Ouimette claims that the Court erred in instructing the jury that conviction on the extortion counts required proof that Ouimette had acted "knowingly and willfully" when the indictment alleged only that he acted "knowingly."

It is difficult to understand how Ouimette claims to have been prejudiced by the alleged error. If anything, instructing the jury that the government had to prove something more than what was required would have been advantageous to Ouimette. In any event, Ouimette appears to have confused the Court's charge on extortion with the charge on aiding and abetting.

Ouimette also claims that the Court erred in not providing the jury with a definition of "extortionate extension of credit" contained in 18 U.S.C. § 891(6). However, Ouimette was charged with a violation of § 894 and the term "extortionate extension of credit" is used to describe violations of § 892(a).

Since there is no merit to either of these claims, Ouimette's counsel cannot be deemed ineffective for failing to raise or pursue them. See Cronic, 466 U.S. at 656 n.19; Vieux v. Pepe, 184 F.3d 59, 64 (1st Cir. 1999), cert. denied, 528 U.S. 1163 (2000).

(5) Sentencing Errors

Next, Ouimette claims that the Court erred in sentencing him to life in prison without the possibility of parole pursuant to 18 U.S.C. § 3559(c) because he did not have prior convictions for "two or more serious violent felonies." 18 U.S.C. § 3559(c)(1)(A)(i). Ouimette does not dispute that he had three prior convictions for robbery, conspiracy to commit murder and assault with an dangerous weapon. However, Ouimette argues that none of those offenses are "violent felonies;" and, even if they are, § 3559(c) is unconstitutional. Both arguments were made by Ouimette's counsel at the time of sentencing and rejected by this Court.

Ouimette also argues, for the first time, that two of the convictions resulted from guilty pleas that the government failed to prove were voluntary and intelligent and that his counsel was ineffective for not challenging them on those grounds. That argument, too, fails because the Supreme Court has made it clear that the state court conviction cannot be collaterally attacked in a federal sentencing proceeding except on the ground that it was uncounseled. See Custis v. United States, 511 U.S. 485, 487 (1994). In fact, the Supreme Court has barred such challenges even in § 2255 proceedings. See Daniels v. United States, ___ U.S. ___, 121 S.Ct. 1578 (2001).

C. The Ineffective Assistance Claim.

Ouimette's "ineffective assistance" claim is based on

counsel's failure to present or pursue the alleged "trial errors". Since the Court already has determined that counsel's performance with respect to those matters was not objectively unreasonable, this claim, too, fails.

## Conclusion

For all of the foregoing reasons, Ouimette's motion to vacate, set aside or correct his sentence is denied.

IT IS SO ORDERED:

Ernest C. Torres

Ernest C. Torres
Chief Judge

Date: June 21, 2001