EXHIBIT B

**DWAYNE OWENS, Petitioner, Appellant, v. UNITED STATES OF AMERICA, Respondent, Appellee.**
**UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT**
**2007 U.S. App. LEXIS 8388**
**Nos. 05-1784, 05-1785**
**April 12, 2007, Decided**

**Editorial Information: Prior History**

APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS. [Hon. Nancy Gertner, U.S. District Judge] and [Hon. William G. Young, U.S. District Judge]. Owens v. United States, 236 F. Supp. 2d 122, 2002 U.S. Dist. LEXIS 24802 (D. Mass., 2002)

**Summary:**

**Posture:**
Petitioner federal inmate filed a petition for a writ of habeas corpus, challenging his convictions on charges of murder, racketeering, assault, and drug trafficking. The United States District Court for the District of Massachusetts denied the petition, and the inmate appealed.

**Cite overview:**
District court erred when it dismissed defendant's petition for habeas relief without holding evidentiary hearing on defendant's claims that he was denied effective assistance of counsel because counsel did not tell him he had right to testify, and right to a public trial because trial court excluded his family from courtroom during jury selection.

**Overview:**
A jury returned a verdict finding defendant guilty of murder, racketeering, assault, and drug trafficking, and his convictions were affirmed on appeal. Defendant filed a petition for a writ of habeas corpus, claiming, inter alia, that he was denied effective assistance of counsel, his right to a public trial, and his right to a fair trial. The district court found that the sentence defendant received for violating 18 U.S.C.S. § 1959(a)(2) was illegal, and it resentenced him for that offense, but it rejected defendant's other claims and dismissed his petition without holding an evidentiary hearing. The court of appeals found that defendant was entitled to an evidentiary hearing on his claim that he was denied effective assistance of counsel because his counsel did not inform him that he had the right to testify, and on his claim that he was denied his right to a public trial because the trial court did not allow members of his family to be present in the courtroom during jury selection. The district court erred when it concluded that, even assuming defendant's allegations were true, he was not entitled to relief on those claims.

**Outcome:**
The court of appeals affirmed the district court's judgment in part and reversed it in part, and remanded the case to the district court for further consideration.

Concepts:
A defendant is entitled to a fair trial but not a perfect one.
28 U.S.C.S. § 2255 provides that a prisoner may move to vacate his sentence upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose the prisoner's sentence, that the sentence was in excess of the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. A significant bar on habeas corpus relief is imposed when a prisoner did not raise his claims at trial or on direct review. In such cases, a court may hear those claims for the first time on habeas corpus review only if the petitioner has cause for having procedurally defaulted his claims, and if the petitioner suffered actual prejudice from the errors of which he complains.
Once a prisoner requests relief under 28 U.S.C.S. § 2255 , a federal district court must grant an evidentiary hearing on the prisoner's claims unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. If a district court holds an evidentiary hearing on a prisoner's claims, the United States Court of Appeals for the First Circuit reviews the district court's factual conclusions for clear error. If a district court

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

dismisses a § 2255 claim without holding an evidentiary hearing, the First Circuit takes as true the sworn allegations of fact set forth in the petition unless those allegations are merely conclusory, contradicted by the record, or inherently incredible. Finally, the First Circuit reviews a district court's denial of a § 2255 petition de novo as to legal conclusions.

The United States Court of Appeals for the First Circuit reviews a district court's denial of an evidentiary hearing for abuse of discretion. A district court may forego such a hearing when the movant's allegations, even if true, do not entitle him to relief, or when the movant's allegations need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible. A district court may also deny an evidentiary hearing when the motion is inadequate on its face. In reviewing a district court's denial of an evidentiary hearing, the First Circuit takes the petitioner's credible allegations as true.

To prove ineffective assistance of counsel, a defendant must show that counsel's representation fell below an objective standard of reasonableness, and that the deficient performance prejudiced his defense. To prove deficient performance, a defendant must establish that counsel was not acting within the broad norms of professional competence. Furthermore, to prove prejudice, a defendant must establish that but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different.

It is clear that a defendant has a fundamental constitutional right to testify in his own defense, and that the right must be unfettered. The right to testify may not be waived by counsel acting alone. Where counsel has failed to inform a defendant of his right to testify, a waiver of that right may not be implied from a defendant's silence at trial. At trial, defendants generally must speak only through counsel, and, absent something in the record suggesting a knowing waiver, silence alone cannot support an inference of such a waiver.

A lawyer plays the primary role in advising his client of the right to testify; a trial judge is not required to apprise a defendant of his right to testify or inquire whether he has waived it.

Failure to inform a defendant of his right to testify constitutes performance outside of an objective standard of reasonable competence of counsel, and such performance is constitutionally deficient.

An attorney's failure to inform his client of his right to testify can be prejudicial. A defendant's testimony can be crucial in any trial, and it can be difficult for an appellate court to determine whether or not a jury would have found a defendant's testimony credible. An appellate court could not logically term "harmless" an error that presumptively kept a defendant from testifying.

Defendants speak to the court through counsel. If counsel refuse or fail to request that the defendant be allowed to testify, the defendant will not be able to speak in his defense. If counsel decline to put their client on the stand without any consultation regarding this decision, and the client is unaware that the right to testify exists, the client will be barred from doing so and thus will have effectively waived his right to testify. However, there can be no effective waiver of a fundamental constitutional right unless there is an intentional relinquishment or abandonment of a known right or privilege.

A defendant's testimony as to noninvolvement should not be disregarded lightly, especially given his constitutional right to explain his version of the facts. The most important witness for the defense in many criminal cases is the defendant himself.

On habeas review, a court may assess the credibility of the defendant's assertion that he would have testified in light of the evidence presented at trial and the evidence that could have been admitted if the defendant had testified.

Nothing in the Constitution justifies meddling with the attorney-client relationship by requiring advice to be given in a specific form or compelling the lawyer to obtain a formal waiver of the right to testify. However, counsel must have some sort of conversation with his or her client informing him or her of the right to testify so that the client can make a knowing and informed decision regarding that right.

A federal district court may not deny a prisoner an evidentiary hearing simply because the court believes that the prisoner's allegations as stated in the habeas corpus petition are untrue.

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

The United States Court of Appeals for the First Circuit does not believe that an instruction to the jury regarding a defendant's right not to testify is sufficient to apprise a defendant of his right to testify such that he can make a knowing and intelligent waiver of that right.
28 U.S.C.S. § 2255 states that a federal district court must grant an evidentiary hearing unless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief.
A defendant has a right to a trial that is open to members of the public. The guarantee of a public trial is for the benefit of the defendant; a trial is far more likely to be fair when the watchful eye of the public is present. The public trial guarantee has been considered so important that courts have reversed convictions or granted habeas relief where the courtroom was closed for the announcement of the verdict, where a trial inadvertently ran so late one night that the public was unable to attend, and where the trial was closed for the testimony of just one witness. As such, it is clear that trial closures are to be rare and only for cause shown that outweighs the value of openness. A closure may be justified only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. In particular, a court must consider (and reject) alternatives to closure before barring public access.
The same standard which is used to determine if a trial should be closed to the public applies to family members and to the general public. Nothing suggests that a trial court need go beyond the already stringent requirements of the United States Supreme Court's decision in Waller v. Georgia before removing a defendant's family members from the courtroom.
Jury selection is a crucial part of any criminal case. It is the primary means by which a court may enforce a defendant's right to be tried by a jury free from ethnic, racial, or political prejudice or predisposition about the defendant's culpability. Even if a courtroom is closed because of inattention by the judge, courts have expressed concern in the past where a court officer's unauthorized closure of a courtroom impeded public access.
Once a petitioner demonstrates a violation of his Sixth Amendment right to a public trial, he need not show that the violation prejudiced him in any way. The mere demonstration that his right to a public trial was violated entitles a petitioner to relief.
In order to establish ineffective assistance of counsel to excuse a procedural default, a defendant must show that counsel's representation fell below an objective standard of reasonableness, and that the deficient performance prejudiced his defense.
The courts have been clear on the importance of a public trial to a defendant.
Structural errors, such as a failure to hold a public trial, defy harmless-error review and infect the entire trial process. In discussing the difference between structural error and trial error, the United States Supreme Court has noted that trial errors that are commonly prejudicial, such as the admission of involuntary confessions, are different than structural errors, for which courts must eschew the harmless-error test entirely. Unlike trial rights, structural rights are basic protections whose precise effects are unmeasurable, but without which a criminal trial cannot reliably serve its function. Structural error thus has consequences that are necessarily unquantifiable and indeterminate. The Supreme Court recently said that this is particularly true in the public trial right context. Violation of the public-trial guarantee is not subject to harmlessness review because the benefits of a public trial are frequently intangible, difficult to prove, or a matter of chance.
If the failure to hold a public trial is structural error, and it is impossible to determine whether a structural error is prejudicial, a defendant who is seeking to excuse a procedurally defaulted claim of structural error need not establish actual prejudice.
A defendant's right to a public trial keeps his triers keenly alive to a sense of their responsibility and encourages witnesses to come forward and discourages perjury. Judges, lawyers, witnesses, and jurors will perform their respective functions more responsibly in an open court than in secret proceedings.
Closure of jury selection to the public for an entire day without meeting the strict requirements of the United States Supreme Court's decision in Waller v. Georgia would

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

violate a defendant's right to a public trial. Counsel's failure to object to such a closure may constitute ineffective assistance of counsel. Finally, because denial of a public trial is structural error, it would be impossible for a defendant to establish actual prejudice, and as such, it must be presumed.
A judge's participation in a trial must be balanced; he cannot become an advocate or otherwise use his judicial powers to advantage or disadvantage a party unfairly. This is true even where a judge's innocently intended statements have impermissibly exceeded the limitations on his power to comment. The United States Court of Appeals for the First Circuit examines allegations of judicial bias to see if comments are improper, and whether the complaining party can show serious prejudice.
A trial judge must not appear to be a partisan for the prosecution.
The purpose of a criminal trial is to provide a neutral forum in which the guilt or innocence of a defendant is determined based on evidence that is free of improper influence. Anything that might detract from this purpose--such as holding an elaborate ceremony for the prosecution in front of the jury in the midst of a trial--should not be considered lightly.
That a judge participates in bolstering the prosecution's credibility only increases the possibility of prejudice to a defendant, given the influence a judge has over the jury. The influence of a trial judge on the jury is necessarily and properly of great weight and his lightest word or intimation is received with deference, and may prove controlling.
Prejudice is always a risk when a judge comments during a trial. Curative instructions, though important, are of limited power.
Absent a showing of actual prejudice, mere bad judgment on the part of a trial court is insufficient to merit a new trial.
It is a long-standing rule in the First Circuit that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.
18 U.S.C.S. § 1959(a)(1) requires only that a defendant commit murder as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity. There is no requirement anywhere in the statute that the murder be premeditated or atrocious.
As long as the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment, the right to a grand jury is not normally violated by the fact that the indictment alleges more crimes or other means of committing the same crime.
Counsel need not interview every possible witness to have performed proficiently. The decision to interview potential witnesses, like the decision to present their testimony, must be evaluated in light of whatever trial strategy reasonably competent counsel devised in the context of the particular case.
See 18 U.S.C.S. § 1962(c) .
New constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced.

**Disposition**

Reversed in part; Affirmed in part; and Remanded.

**Counsel**

Peter B. Krupp, with whom Lurie & Krupp, LLP was on brief, for appellant.

Theodore B. Heinrich, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief, for appellee.

**Judges:** Before Torruella, Lipez, and Howard, Circuit Judges.

**Opinion**

**Opinion by:** TORRUELLA

**TORRUELLA, *Circuit Judge*.** It has long been true that "[a] defendant is entitled to a fair trial but not a perfect one." *Lutwak* v. *United States*, 344 U.S. 604, 619, 73 S. Ct. 481, 97 L. Ed. 593 (1953) . The trial of Dwayne Owens on a variety of racketeering, murder, assault, and drug trafficking charges has tested that proposition. On balance, we find that Owens' trial may have crossed the line from imperfect to unfair.

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

## I. *Background*

The Government's case against Owens is not particularly relevant to the issues on appeal. To summarize briefly, the Government presented evidence at Owens' trial that Owens played a significant role in an enterprise that sold kilogram quantities of cocaine in Massachusetts and Rhode Island. In order to protect his enterprise, Owens at times resorted to violence. According to testimony, he provided guns to other members of the enterprise who used them to extract "refunds" from cocaine suppliers whose shipments were deemed inadequate. Notably, witnesses also testified that Owens killed Rodney Belle, whom he thought to have double-crossed him during a drug deal.1

Owens was arrested on December 13, 1995, and an indictment was returned against him on December 19, 1995. A superseding indictment was returned on May 14, 1996, charging Owens with the aforementioned crimes, and a host of others. A jury trial for Owens began on February 10, 1997.

On the first day of jury selection, the court wanted to select the jury from a venire of seventy-two potential jurors, but the courtroom in which jury selection was to occur was quite small. The following colloquy took place between the court and the U.S. Marshal:

> Court: We're going to get 72 jurors in here. That will mean we'll have a number of jurors. Now, let me ask the marshals. It looks like we're going to need all the rows except for this first row [where the defendants were seated]. Is that going to be sufficient for you?
>
> Marshal: I think so, your Honor. I just spoke to [the courtroom deputy] about it, and I was going, I'll have the officers and myself and the other fellows with me stand off to the right, make sure all the jurors get seated and have whatever spectators leave until there's a sufficient amount of room.
>
> Court: We'll need every seat with 72 people. All right.
>
> Neither party objected at this time. The marshals cleared the courtroom and the potential jurors proceeded to enter. As jurors were dismissed, they left. Despite the growing number of seats vacated by dismissed jurors, according to affidavits submitted in connection with this case, the marshals continued to bar Owens' family from the courtroom for the remainder of jury selection, which lasted an entire day. According to Owens and his trial attorneys, neither Owens nor counsel was aware that Owens' family members were being barred from the courtroom.

One month into Owens' trial, the court held a swearing-in ceremony for a new Assistant U.S. Attorney ("AUSA"), Robert Peabody. Upon learning of the court's plan, defense counsel objected. At sidebar, the judge vowed to "love all lawyers equally . . . [and] love the bar generally." The judge added, "I really don't think you are hurt by this." Defense counsel replied that they were concerned about the impact on the jury of hearing the oath administered. The court promised to issue curative instructions, overruled the objection, and proceeded with the swearing-in ceremony. The court then stated:

> Now ladies and gentlemen, we have the happy occasion of administering the oath of office to a new Assistant United States Attorney. Now, let's be very clear, I very much prefer to do this in the middle of whatever trial we have going on.
>
> . . .
>
> Now there is a concern here. The fact that I do this, and I'm proud to admit Mr. Peabody to the company of the Assistant United States Attorneys, we're in no way preferring the prosecutors. Ms. Conrad, for instance, is a member of the Federal Public Defender's Office and she likewise is sworn in as an advocate for people who are accused of a crime, and I would do the same for

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

> her. And it's interesting to remark that many distinguished defense counsel have appeared here to see Mr. Peabody sworn in.
>
> Because you see the lawyers, especially those lawyers who are active in so-called criminal cases, know one another and they have the highest respect for each other. They're the closest things that we have to barristers, the English system, the people who actually go to court every day. So while I am especially proud, and I am, Mr. Peabody, to conduct this ceremony, as is my practice, in the middle of a serious trial, I caution the jury that if I had a defender here, I would do exactly the same thing and then caution you that I'm not favoring defenders over someone who's being sworn in as a prosecutor.

An AUSA then read Peabody's curriculum vitae, and moved that he be sworn in. The court asked everybody present in the courtroom to stand, and proceeded to administer the following oath of office:

> I, Robert Peabody, do solemnly swear that I will support and defend the Constitution of the United States, against all enemies, foreign and domestic, that I will bear true faith and allegiance to the same, that I take this obligation freely, without any mental reservation or purpose of evasion, and that I will well and faithfully discharge the duties of the office on which I am about to enter, so help me God.
>
> The courtroom burst into applause. According to the Government, the court then stated that it was "an honor and privilege to include [Peabody] among attorneys who share the right to practice within this bar enclosure the vital role of teaching. It's imposed both on those who have the burden of prosecuting and those who have the significant responsibility of defending those in our society." After the swearing-in ceremony, one juror asked the court to "explain the difference between the two types of lawyers."2

The trial continued until March 27, 1997. Owens never testified in his own defense. According to Owens, this is because his attorneys never informed him of his right to testify or consulted him about whether he would like to do so. One of Owens' trial attorneys submitted an affidavit in connection with this case, in which he stated, "I do not remember ever discussing with Dwayne Owens that he had a right to testify and whether he wished to testify." Only once did the court reference a defendant's right to testify, and even then, the reference was oblique: in its pre-trial charge to the jury, the court stated that defendants did not have to testify or call witnesses, but "of course, they can do those things."

The jury returned a verdict finding Owens guilty on nine charges and not guilty on six additional charges. The court sentenced Owens to life terms on five of the charges, and to the maximum statutory term on the remaining charges. We affirmed Owens' conviction on appeal. *Owens*, 167 F.3d 739 . Owens then appealed his conviction to the Supreme Court, which denied certiorari, 528 U.S. 894, 120 S. Ct. 224, 145 L. Ed. 2d 188 (1999) .

In 2001, Owens filed a petition for habeas corpus with the district court, in which he claimed that he had ineffective assistance of counsel at trial and on appeal, and that a number of errors in the proceedings denied him a fair trial.3 The district court denied Owens' petition for a writ of habeas corpus on all grounds except one,4 which is not the subject of this appeal.5

## II. *Discussion*

### A. Standard of Review

Because Owens is in federal custody, his habeas corpus petition is controlled by 28 U.S.C. § 2255 . Section 2255 provides that a prisoner may move to vacate his sentence

> upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

A significant bar on habeas corpus relief is imposed when a prisoner did not raise claims at trial or on direct review. In such cases, a court may hear those claims for the first time on habeas corpus review only if the petitioner has "cause" for having procedurally defaulted his claims, and if the petitioner suffered "actual prejudice" from the errors of which he complains.6 *United States* v. *Frady*, 456 U.S. 152, 168, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982) ; *Knight* v. *United States*, 37 F.3d 769, 774 (1st Cir. 1994) .

Once a prisoner requests relief under § 2255 , a district court must grant an evidentiary hearing on the prisoner's claims unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255 . If a district court holds an evidentiary hearing on the claim, we review its factual conclusions for clear error. *Awon* v. *United States*, 308 F.3d 133, 140 (1st Cir. 2002) . If a district court dismisses a § 2255 claim without holding an evidentiary hearing, we take as true the sworn allegations of fact set forth in the petition "unless those allegations are merely conclusory, contradicted by the record, or inherently incredible." *Ellis* v. *United States*, 313 F.3d 636, 641 (1st Cir. 2002) . Finally, we review a district court's denial of a § 2255 petition *de novo* as to legal conclusions. *Awon*, 308 F.3d at 140 .

**B. Ineffective Assistance of Counsel**

Owens argues that the district court erred in dismissing without an evidentiary hearing his claim that his attorneys' failure to inform him of his right to testify at trial violated his Sixth Amendment right to the effective assistance of counsel. Owens stated in his affidavit that he was never told of his right to testify; one of Owens' trial attorneys stated that he did not recall telling Owens of his right to testify, and the other trial attorney said nothing about the issue.

The district court found that an attorney's failure to tell his client that he had a right to testify would constitute deficient performance by counsel. The court further found that such ineffective assistance would be presumptively prejudicial, given that it affected a defendant's clear right to testify in his defense. However, the district court declined to conduct an evidentiary hearing on Owens' allegations because it felt that Owens did not "present[] a sufficient proffer to establish that he was not advised of his right to testify." *Owens* v. *United States*, 236 F. Supp. 2d 122, 144 (D. Mass. 2002) . Further, even taking Owens' allegations as true, the district court concluded that Owens was adequately informed at trial of his right to testify.

We review a district court's denial of an evidentiary hearing for abuse of discretion. *David* v. *United States*, 134 F.3d 470, 477 (1st Cir. 1998) . A district court may forego such a hearing when "the movant's allegations, even if true, do not entitle him to relief, or . . . [when] the movant's allegations 'need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible.'"7 *Id.* (quoting *United States* v. *McGill*, 11 F.3d 223, 225-26 (1st Cir. 1993)) . In reviewing a district court's denial of an evidentiary hearing, we take the petitioner's credible allegations as true. *Ellis*, 313 F.3d at 641 .

To prove ineffective assistance of counsel, a defendant must show that "counsel's representation fell below an objective standard of reasonableness," and that "the deficient performance prejudiced his defense." *Strickland* v. *Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To prove deficient performance, a defendant must establish that counsel was not acting within the broad norms of professional competence. *Id.* at 687-91 . Furthermore, to prove prejudice, a defendant must establish that but for counsel's deficient performance, there is a reasonable probability that the outcome

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

would have been different. *Id.* at 694 .

It is clear that a defendant has a "fundamental constitutional" right to testify in his own defense, *Rock* v. *Arkansas*, 483 U.S. 44, 51-53, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987) , and that the right must be "unfettered," *Harris* v. *New York*, 401 U.S. 222, 230, 91 S. Ct. 643, 28 L. Ed. 2d 1 (1971) . The right to testify may not be waived by counsel acting alone. *See United States* v. *Mullins*, 315 F.3d 449, 454 (5th Cir. 2002) ("The defendant's right to testify is secured by the Constitution and only he can waive it."); *Sexton* v. *French*, 163 F.3d 874, 881 (4th Cir. 1998) ("[E]very circuit that has addressed the issue has held that the right to testify is personal and must be waived by the defendant."); *Lema* v. *United States*, 987 F.2d 48, 52 (1st Cir. 1993) (assuming, but not deciding the question); *Vega-Encarnacion* v. *United States*, 1993 U.S. App. LEXIS 10068 at *9 (1st Cir. 1993) ("[The] right [to testify] is personal and cannot be waived by counsel."). Where counsel has failed to inform a defendant of his right to testify, we do not believe that a waiver of that right may be implied from defendant's silence at trial; "at trial, defendants generally must speak only through counsel, and, absent something in the record suggesting a knowing waiver, silence alone cannot support an inference of such a waiver." *Chang* v. *United States*, 250 F.3d 79, 84 (2d Cir. 2001) ; *see also Mullins*, 315 F.3d at 455 ("Declining to place upon the defendant the responsibility to address the court directly is consistent with the reality that routine instructions to defendants regarding the protocols of the court often include the admonition that they are to address the court only when asked to do so.").

A lawyer plays the primary role in advising his client of the right to testify; a trial judge is not required to apprise a defendant of his right to testify or inquire whether he has waived it. *Siciliano* v. *Vose*, 834 F.2d 29, 30 (1st Cir. 1987) . The district court correctly noted that American Bar Association Standard for Criminal Justice 4-5.2(a), Model Rule of Professional Conduct 1.2(a), and Massachusetts Rule of Professional Conduct 1.2(a) all require counsel to consult with defendants regarding their right to testify. *See Rompilla* v. *Beard*, 545 U.S. 374, 387, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005) (noting the importance of ABA standards "as 'guides to determining what is reasonable.'" (quoting *Wiggins* v. *Smith*, 539 U.S. 510, 524, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003))) . Given these obligations, it becomes difficult to explain away counsels' failure to inform their client of his right to testify as trial strategy. *Cf. Tejeda* v. *Dubois*, 142 F.3d 18, 25 (1st Cir. 1998) (noting that an attorney's animosity towards the trial judge could not be explained as a reasonable trial tactic). Furthermore, given the paramount importance of the right to testify and the small amount of time that would be required to inform the defendant of that right, we do not believe counsels' failure can be classified as an inconsequential slip. *See Prou* v. *United States*, 199 F.3d 37, 48 (1st Cir. 1999) ("[C]ourts have not hesitated in finding ineffective assistance of counsel based upon isolated -- but important -- errors."). Thus, we agree with the district court that failure to inform a defendant of his right to testify constitutes performance outside of an objective standard of reasonable competence, and that such performance is constitutionally deficient. *See United States* v. *Teague*, 953 F.2d 1525, 1532 (11th Cir. 1992) (en banc); *see also Chang*, 250 F.3d at 83 ; *United States* v. *Pennycooke*, 65 F.3d 9, 13 (3d Cir. 1995) ("[W]e realize that a convicted defendant may assert a claim that the trial attorney gave ineffective assistance . . . by failing to advise the defendant of his or her right to testify.").

We also agree with the district court that an attorney's failure to inform his client of his right to testify could be prejudicial. A defendant's testimony could be crucial in any trial, and it could be difficult for us to determine whether or not a jury would have found his testimony credible. *See Luce* v. *United States*, 469 U.S. 38, 42, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984) ("[An] appellate

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

court could not logically term 'harmless' an error that presumptively kept the defendant from testifying."); *Rock* v. *Arkansas*, 483 U.S. 44, 52, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987) ("There is no justification today for a rule that denies an accused the opportunity to offer his own testimony."); *Martinez* v. *Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991) (deciding that where counsel failed to inform defendant of his right to testify, "it is only the most extraordinary of trials in which a denial of the defendant's right to testify can be said to be harmless beyond a reasonable doubt"). Although Owens makes no allegation that his trial counsel directly barred him from testifying, the failure to inform Owens of his right to testify would have effectively prevented him from doing so. As we noted before, defendants speak to the court through counsel. *Chang*, 250 F.3d at 84 . If counsel refuse or fail to request that the defendant be allowed to testify, the defendant will not be able to speak in his defense. If counsel decline to put their client on the stand without any consultation regarding this decision, and the client is unaware that the right to testify exists, the client will be barred from doing so and thus will have effectively waived his right to testify. However, "there can be no effective waiver of a fundamental constitutional right unless there is an 'intentional relinquishment or abandonment of a *known* right or privilege.'" *Teague*, 953 F.2d at 1533 (quoting *Johnson* v. *Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938)) . Thus, if Owens was unaware of his right to testify and his attorneys did not ask him whether he wanted to testify, Owens was effectively barred from testifying in his own defense.

The Second Circuit found that counsel's failure to inform the defendant of his right to testify was not prejudicial in *Brown* v. *Artuz*, 124 F.3d 73, 80 (2d Cir. 1997) . We agree with the court in *Brown* that where the defendant would have testified only "to demonstrate that the prosecution failed to disprove his defense of justification beyond a reasonable doubt," there is a weaker argument that the defendant was prejudiced by not testifying. *Id.* at 80-81 . However, Owens claims that he would have offered testimony exculpating him from at least some of the crimes for which he was convicted.8 A defendant's testimony as to non-involvement should not be disregarded lightly, especially given his constitutional right to explain his version of the facts. *See Rock*, 483 U.S. at 52 ("[T]he most important witness for the defense in many criminal cases is the defendant himself."). As such, we conclude that if Owens was not informed by counsel of his right to testify in his own defense, was not otherwise informed of the right by the court, and would have offered genuinely exculpatory testimony,9 the failure of counsel to inform Owens of his right to testify would be prejudicial.10

The district court nevertheless denied Owens' request for an evidentiary hearing on two grounds. First, it found that Owens' allegations were "inherently incredible." Specifically, the court noted that one of Owens' attorneys had been named one of the "100 finest lawyers in Boston," and that it found it "incredible" that "two such able and experienced attorneys could fail to discuss such an important matter with Owens." *Owens*, 236 F. Supp. 2d at 144 n.14 . A district court may not deny a prisoner an evidentiary hearing simply because the court believes that the prisoner's allegations as stated in the habeas corpus petition are untrue. *Mack* v. *United States*, 635 F.2d 20, 26 (1st Cir. 1980) . Owens' allegations were neither "so evanescent or bereft of detail that they cannot reasonably be investigated," nor "threadbare allusions." *David*, 134 F.3d at 478 . Nor were Owens' allegations unsubstantiated. *See United States* v. *Butt*, 731 F.2d 75, 80 n.5 (1st Cir. 1984) ("Evidentiary hearings have been granted to § 2255 appellants who have claimed that their plea was induced by attorney misrepresentations only when the allegations were highly specific and usually accompanied by some independent corroboration."). Rather, Owens and one of Owens' trial attorneys provided detailed affidavits indicating that Owens was never told of his right to testify at trial. The second trial attorney's silence on this issue is

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

puzzling. Rather than guessing at this potential inconsistency, it is better that it be resolved after an evidentiary hearing at which all involved testify under oath and subject to cross-examination. Thus, the nature of Owens' allegations did not justify the district court's denial of an evidentiary hearing.

Second, the district court also suggested that, even taking Owens' allegations as true, Owens was not entitled to relief because the trial court did, in fact, inform him of his right to testify. The district court stated that it instructed the jury that defendants did not have to testify or call witnesses, but "of course, they can do those things." Because Owens was present in the courtroom, the district court concluded that this statement adequately informed him of his right to testify. We do not believe that an instruction to the *jury* regarding a defendant's right *not* to testify is sufficient to apprise a defendant of his right to testify such that he can make a knowing and intelligent waiver of that right. Therefore, it was error for the district court to have concluded that Owens' allegations, taken as true, did not entitle him to relief.

Thus, because Owens' allegations are not implausible, and because they could, if true, entitle him to relief, the district court's decision to deny an evidentiary hearing was an abuse of discretion. *See* 28 U.S.C. § 2255 (stating that a district court must grant an evidentiary hearing "unless the motions and the files and records of the case *conclusively* show that the prisoner is entitled to no relief." (emphasis added)). A final determination of the merits of Owens' claim would be best served by greater development of the facts, many of which the Government disputes. Accordingly, we remand this claim to the district court for an evidentiary hearing to determine whether Owens' counsel did or did not inform him of his right to testify, whether Owens would have testified if so informed, and the nature of his testimony.

**C. The Right to a Public Trial**

Owens claims that the district court erred in not holding an evidentiary hearing on his claim that barring his family from the courtroom violated his Sixth Amendment right to a fair trial. *See Press-Enterprise Co.* v. *Superior Court of Cal.*, 464 U.S. 501, 505, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984) (finding a First Amendment right to public jury selection); *Waller* v. *Georgia*, 467 U.S. 39, 46, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984) ("[T]here can be little doubt that the explicit Sixth Amendment right of the accused is no less protective of a public trial than the implicit First Amendment right of the press and public."). Two members of Owens family submitted affidavits stating that uniformed officers prevented them from entering the courtroom during the first day of jury selection in Owens' trial.

The district court declined to conduct an evidentiary hearing because it found that Owens' allegations were inherently incredible. Further, the district court concluded that Owens was not entitled to relief even taking his allegations as true. Specifically, the district court concluded that the trial closure was not sufficiently prejudicial to warrant relief. Further, the district court noted that Owens had procedurally defaulted this claim, and found that Owens could show neither "cause" nor "prejudice" to excuse the default.

A defendant has a right to a trial that is open to members of the public. *Waller*, 467 U.S. at 46 . The guarantee of a public trial is for the benefit of the defendant; a trial is far more likely to be fair when the watchful eye of the public is present. *In re Oliver*, 333 U.S. 257, 270, 68 S. Ct. 499, 92 L. Ed. 682 (1948) ("The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power."); *Gannett Co.* v. *DePasquale*, 443 U.S. 368, 380, 99 S. Ct. 2898, 61 L. Ed. 2d 608 (1979) ("Our cases have uniformly recognized the public-trial guarantee as one created for the benefit of the defendant."). The public trial guarantee has been considered so important that courts have reversed convictions or granted habeas

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

relief where the courtroom was closed for the announcement of the verdict, *United States* v. *Canady*, 126 F.3d 352, 364 (2d Cir. 1997) , where a trial inadvertently ran so late one night that the public was unable to attend, *Walton* v. *Briley*, 361 F.3d 431, 433 (7th Cir. 2004) , and where the trial was closed for the testimony of just one witness, *United States* v. *Thunder*, 438 F.3d 866, 868 (8th Cir. 2006) .

As such, it is clear that trial closures are to be "rare and only for cause shown that outweighs the value of openness." *Press-Enterprise*, 464 U.S. at 509 ; *Waller*, 467 U.S. at 47 ("[U]nder the Sixth Amendment any closure of a suppression hearing over the objections of the accused must meet the tests set out in *Press-Enterprise* and its predecessors."). A closure may be justified only by "an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise*, 464 U.S. at 510 ; *United States* v. *Antar*, 38 F.3d 1348, 1361 (3d Cir. 1994) . In particular, a court must consider (and reject) alternatives to closure before barring public access. *Press-Enterprise*, 464 U.S. at 511 .

Given the absence of on-the-record findings, it is difficult for us to discern whether it was necessary for the entire courtroom to be cleared of spectators to permit the jury pool to enter.11 Most justifications for trial closure have involved the need to protect witnesses or maintain courtroom order. *See*, *e.g.*, *United States* v. *Sherlock*, 962 F.2d 1349, 1356 (9th Cir. 1992) (collecting cases). To our knowledge, a trial closure has not yet been justified on the basis of convenience to the court. *See* *People* v. *Harris*, 10 Cal. App. 4th 672, 12 Cal.Rptr.2d 758, 766 (Cal. App. 1992) (deciding that "no cogent argument can be mounted" that expediting jury selection is a higher value than the right to a public trial). Given the strong interest courts have in providing public access to trials, the district court could have considered whether a larger courtroom was available for jury selection. If the closure alleged by Owens did occur, the court was obligated to consider this alternative. *Press-Enterprise*, 464 U.S. at 511 .

Even assuming that the courtroom needed to be initially cleared of spectators, once prospective jurors began to leave the courtroom, the court's interest in closing the courtroom dissipated. For example, in *State* v. *Ortiz*, the Hawaii Supreme Court found that while an order excluding the defendant's family from voir dire was initially justified by a compelling state interest,

> the circuit court's exclusion order remained in place even after the court had conducted a voir dire of all of the jurors and had satisfied itself that no jury tampering had taken place. Ortiz's family was prevented from entering the courtroom, not merely during the testimony of one or two witnesses, but over the course of at least five days of trial. It is therefore obvious that the circuit court's exclusion order was not "narrowly tailored" to meet the state's purported interest.
>
> 91 Haw. 181, 981 P.2d 1127, 1138 (Haw. 1999) ; *see also* *People* v. *Baldwin*, 142 Cal. App. 4th 1416, 1424, 48 Cal. Rptr. 3d 792 (Cal. Ct. App. 2006) (reversing for a public trial violation where the court failed to "fashion a narrow exclusion order to infringe on the competing interests as little as possible"). Once there was sufficient space in the courtroom, we see no state interest -- compelling or otherwise -- in not permitting Owens' family, friends,12 or other members of the public to observe the proceedings.

The Government protests that this was a "trivial, inadvertent courtroom closure." *Bowden* v. *Keane*, 237 F.3d 125, 129 (2d Cir. 2001) ; *see also* *Peterson* v. *Williams*, 85 F.3d 39, 44 (2d Cir. 1996) ("[I]n the context of this case, where the closure was 1) extremely short, 2) followed by a helpful summation, and 3) entirely inadvertent, the defendant's Sixth Amendment rights were not breached."). However, this was not a

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

mere fifteen or twenty-minute closure; rather, Owens' trial was allegedly closed to the public for an entire day while jury selection proceeded. Jury selection is, of course, a crucial part of any criminal case. *See Gomez* v. *United States*, 490 U.S. 858, 873, 109 S. Ct. 2237, 104 L. Ed. 2d 923 (1989) ("Jury selection is the primary means by which a court may enforce a defendant's right to be tried by a jury free from ethnic, racial, or political prejudice . . . or predisposition about the defendant's culpability . . . ."). Furthermore, even if the courtroom was closed because of inattention by the judge, courts have expressed concern in the past where a court officer's unauthorized closure of a courtroom impeded public access. *See, e.g., Walton* v. *Briley*, 361 F.3d 431, 433 (7th Cir. 2004) ("Whether the closure was intentional or inadvertent is constitutionally irrelevant."); *Martineau* v. *Perrin*, 601 F.2d 1196, 1200 (1st Cir. 1979) (noting Sixth Amendment concern where marshals locked courtroom doors without authorization); *see also United States* v. *Keaveny*, 1999 U.S. App. LEXIS 3630 at *4 (1st Cir. 1999) ("[C]onstitutional concerns may be raised even by a court officer's unauthorized partial exclusion of the public.").

Finally, to the extent that the Government suggests we determine whether the trial closure was prejudicial, the cases on this issue are clear: "once a petitioner demonstrates a violation of his Sixth Amendment right to a public trial, he need not show that the violation prejudiced him in any way. The mere demonstration that his right to a public trial was violated entitles a petitioner to relief." *Judd* v. *Haley*, 250 F.3d 1308, 1315 (11th Cir. 2001) . Thus, we conclude that if the trial court barred spectators from the courtroom as Owens alleges, he was denied his Sixth Amendment right to have a public trial.

However, our inquiry does not end here. Owens procedurally defaulted his public trial claim by failing to object to the courtroom closure at trial and failing to preserve the objection on appeal. Thus, Owens must demonstrate cause for the procedural default and that the public trial error caused him "actual prejudice." *Knight*, 37 F.3d at 774 .

Owens claims that his trial and appellate counsel were ineffective in failing to raise this issue, and that this ineffective assistance is cause for the procedural default. *See Coleman* v. *Thompson*, 501 U.S. 722, 753-54, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991) . In order to establish ineffective assistance of counsel to excuse a procedural default, Owens must show that "counsel's representation fell below an objective standard of reasonableness," and that "the deficient performance prejudiced his defense." *Strickland*, 466 U.S. at 687-88 .

Owens' attorneys' failure to notice or object to the closure of his trial may show that their performance fell below "an objective standard of reasonableness." The courts have been clear on the importance of a public trial to a defendant. *See Brecht*, 507 U.S. at 630, 113 S. Ct. 1710, 123 L. Ed. 2d 353 ; *In re Oliver*, 333 U.S. at 270 ("The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power."); *see also Canady*, 126 F.3d at 364 ("[I]f we were to hold that the [public trial] error was not structural and thus subject to harmless error analysis, it would almost always be held to be harmless. In this way, the [public trial] right would become a right in name only, since its denial would be without consequence."). Counsel's failure to object to closing the trial for an entire day of jury selection, one of the most important phases of a criminal trial, deprived Owens of a substantial fair trial right. On the record before us and without the benefit of an evidentiary hearing, we do not see how the failure to object to the closure could have been sound trial strategy. Furthermore, given that the courtroom was closed to the public for an entire day, and that those excluded include Owens' mother and uncle, we do not believe that the failure to object

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

could have been "mere inadvertence." Thus, we conclude that Owens' counsel may have been ineffective in failing to object to the closure of jury selection to the public.

Prejudice presents a thornier issue.13 The Government urges us to find that closure of Owens' trial for an entire day of jury selection was not prejudicial. The flaw in this argument is that structural errors, such as a failure to hold a public trial, "defy harmless-error review" and "infect the entire trial process." *Neder* v. *United States*, 527 U.S. 1, 8, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (internal citations and quotations omitted). In discussing the difference between structural error and trial error, the Supreme Court has noted that trial errors that are commonly prejudicial, such as the admission of involuntary confessions, are different than structural errors, for which courts must "eschew[] the harmless-error test entirely." *Arizona* v. *Fulminante*, 499 U.S. 279, 312, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991) . Unlike trial rights, structural rights are "'basic protection[s]' whose precise effects are unmeasurable, but without which a criminal trial cannot reliably serve its function." *Sullivan* v. *Louisiana*, 508 U.S. 275, 281, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993) . Structural error thus has "consequences that are necessarily unquantifiable and indeterminate." *Id.*; *United States* v. *Gonzalez-Huerta*, 403 F.3d 727, 734 (10th Cir. 2005) ("[I]f, as a categorical matter, a court is capable of finding that the error caused prejudice upon reviewing the record, then that class of errors is not structural."). The Supreme Court recently said that this is particularly true in the public trial right context. *See United States* v. *Gonzalez-Lopez*, 126 S. Ct. 2557, 2564 n.4, 165 L. Ed. 2d 409 (2006) (citing *Waller*, 467 U.S. at 49 n.9 , for the proposition that "violation of the public-trial guarantee is not subject to harmlessness review because 'the benefits of a public trial are frequently intangible, difficult to prove, or a matter of chance'").

If the failure to hold a public trial is structural error, *Neder*, 527 U.S. at 8 , and it is impossible to determine whether a structural error is prejudicial, *Sullivan*, 508 U.S. at 281 , we must then conclude that a defendant who is seeking to excuse a procedurally defaulted claim of structural error need not establish actual prejudice.14 *See Sustache-Rivera* v. *United States*, 221 F.3d 8, 17 (1st Cir. 2000) ("If [an error] did constitute structural error, there would be per se prejudice, and harmless error analysis, in whatever form, would not apply."); *see also Becht* v. *United States*, 403 F.3d 541, 549 (8th Cir. 2005) (suggesting, but not deciding, that counsel's failure to raise a structural error on appeal would constitute per se prejudice); *McGurk* v. *Stenberg*, 163 F.3d 470, 475 (8th Cir. 1998) (holding that where counsel's deficient performance resulted in structural error, prejudice will be presumed); *Canady*, 126 F.3d at 364 (even though habeas petitioner had not raised public trial claim on direct appeal, deciding that he was entitled to relief because public trial claim is structural error). We will not ask defendants to do what the Supreme Court has said is impossible.

A brief analysis of Owens' public trial claim shows the logic of this conclusion. A defendant's right to a public trial "keep[s] his triers keenly alive to a sense of their responsibility" and "encourages witnesses to come forward and discourages perjury." *Waller*, 467 U.S. at 46 . "[J]udges, lawyers, witnesses, and jurors will perform their respective functions more responsibly in an open court than in secret proceedings." *Estes* v. *Texas*, 381 U.S. 532, 588, 85 S. Ct. 1628, 14 L. Ed. 2d 543 (1965) (Harlan, J., concurring). Owens' trial was allegedly closed to the public during jury selection. It is possible that jurors might have been more forthcoming about biases and past experiences if they had faced the public. It is also possible that Owens and the Government might have picked a more impartial jury or asked different questions with local citizenry watching. All of these possibilities call into question the fundamental fairness of Owens' trial. Requiring that Owens prove any of them by a preponderance of the evidence would be a

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

burden impossible to meet. *See Gonzalez-Lopez*, 126 S. Ct. at 2565 (refusing to apply harmlessness review to violation of right to counsel because "[w]e would have to speculate upon what matters the rejected counsel would have handled differently--or indeed, would have handled the same but with the benefit of a more jury-pleasing courtroom style or a longstanding relationship of trust with the prosecutors. And then we would have to speculate upon what effect those different choices or different intangibles might have had."). As such, on remand, the court need not require Owens to prove that his counsel's failure to object to the trial closure was actually prejudicial.

Thus, to summarize, closure of jury selection to the public for an entire day without meeting the strict requirements of *Waller* would violate a defendant's right to a public trial. Counsel's failure to object to such a closure may constitute ineffective assistance of counsel. Finally, because denial of a public trial is structural error, it would be impossible for Owens to establish actual prejudice, and as such, it must be presumed. Given these conclusions, it was error for the district court to conclude that, assuming the truth of his allegations, Owens was not entitled to relief. Accordingly, the district court abused its discretion in declining to hold an evidentiary hearing. Without the benefit of an evidentiary hearing to determine the nature and extent of the trial closure, we think it improvident to determine whether the trial was actually closed, and whether counsel's failure to object to the closure in this case would constitute ineffective assistance of counsel. Accordingly, we remand to the district court for full consideration (including an evidentiary hearing) of Owens' claim regarding the closure of his trial during jury selection.

**D. Swearing-in of the AUSA**

Owens argues that the swearing-in of the AUSA in the middle of the trial, combined with laudatory comments made by the judge during the swearing-in ceremony, presented the prosecution in a positive light for a reason totally unrelated to the case.15 Accordingly, Owens argues, the jury was no longer impartial and may have favored the prosecution based on evidence unrelated to the trial.

The district court denied this habeas claim in a separate order by Judge Gertner, finding that "viewing the ceremony as a whole, there is virtually no possibility that jurors would believe the Court favored one side over the other."16

As an initial matter, we note that a "judge's participation [in a trial] must be balanced; he cannot become an advocate or otherwise use his judicial powers to advantage or disadvantage a party unfairly." *Logue* v. *Dore*, 103 F.3d 1040, 1045 (1st Cir. 1997) . This is true even where a judge's innocently intended statements have "impermissibly exceeded the limitations on his power to comment." *United States* v. *Paiva*, 892 F.2d 148, 159 (1st Cir. 1989) . We examine allegations of judicial bias to see if comments are improper, and "whether the complaining party can show serious prejudice." *United States* v. *Cunan*, 152 F.3d 29, 37 (1st Cir. 1998) (quoting *Logue*, 103 F.3d at 1045 ).

There is little question that the decision to hold a swearing-in ceremony for an AUSA in the middle of a lengthy and high-profile criminal trial was inappropriate. *Cf. United States* v. *Michienzi*, 630 F.2d 455, 456-57 (6th Cir. 1980) ("While we recognize that the District Judge's greeting to his old friend [a witness in the trial] was plainly not intended to sway the jury, the episode may have lent undue weight to the testimony given by the witness involved."); *United States* v. *Cisneros*, 491 F.2d 1068, 1074 (5th Cir. 1974) ("A trial judge must not appear to be a partisan for the prosecution."). At oral argument, even the Government conceded that such a decision may have been unwise. We feel it necessary to reiterate that the purpose of a criminal trial is to provide a neutral forum in which the guilt or innocence of a defendant is determined based on evidence that is free of improper influence.

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Anything that might detract from this purpose -- such as holding an elaborate ceremony for the prosecution in front of the jury in the midst of a trial -- should not be considered lightly.

In many ways, the issue at Owens' trial raises concerns similar to those in cases in which the Government has vouched for its own credibility. *See*, *e.g.*, *United States* v. *Smith*, 962 F.2d 923, 933-34 (9th Cir. 1992) (reversing for plain error where the prosecutor made "repeated comments aimed at establishing his own veracity and credibility as a representative of the government"); *see also* *United States* v. *Gonzalez Vargas*, 558 F.2d 631, 633 (1st Cir. 1977) ("[T]he representative of the government approaches the jury with the inevitable asset of tremendous credibility -- but that personal credibility is one weapon he must not use."). Likewise, the jury in Owens' case was told of the background and professional experience of the prosecutor being sworn in, that a prosecutor was sworn to "support and defend the Constitution of the United States," and that many defense attorneys had come to watch the AUSA be sworn in. That the judge participated in bolstering the prosecution's credibility only increases the possibility of prejudice, given the influence a judge has over the jury. *See* *Quercia* v. *United States*, 289 U.S. 466, 470, 53 S. Ct. 698, 77 L. Ed. 1321 (1933) ("The influence of the trial judge on the jury is necessarily and properly of great weight and his lightest word or intimation is received with deference, and may prove controlling." (internal quotation marks omitted)).

Whether Owens was prejudiced by the swearing-in ceremony presents a closer question. It is unfortunate that the trial judge's ill-advised actions have placed before us this difficult question. Prejudice is always a risk when a judge comments during a trial. *United States* v. *Hickman*, 592 F.2d 931, 933 (6th Cir. 1979) ("[P]otential prejudice lurks behind every intrusion into a trial made by a presiding judge."). The Government notes that the court issued some curative instructions. *See*, *e.g.*, *United States* v. *Quesada-Bonilla*, 952 F.2d 597, 601 (1st Cir. 1991) (finding no prejudice where the judge issued curative instructions). On the other hand, curative instructions, though important, are of limited power. *Crowe* v. *Di Manno*, 225 F.2d 652, 655 (1st Cir. 1955) ("At the most [curative instructions] can offset only brief and minor departures from strict judicial impartiality."); *see also* *United States* v. *Filani*, 74 F.3d 378, 386 (2d Cir. 1996) ("[T]he presiding judge cannot . . . foster the notion that the judge believes one version of an event and not another. Curative instructions to the jury . . . do not remove such an impression once it is created."). The Government also points out that Owens was acquitted on a number of charges. *See*, *e.g.*, *United States* v. *Dworken*, 855 F.2d 12, 29 (1st Cir. 1988) ("[T]he jury's discerning verdict [acquitting the defendant on one count] 'reflects a careful dissection of the evidence as it applied to each defendant.'").

On balance, we do not think that Owens has shown that he was prejudiced by the swearing-in ceremony. While we continue to think the ceremony and the judge's comments were ill-advised, the quantity of the evidence against Owens, the jury's discerning verdict, the curative instructions, the fact that the prosecutor who was sworn in was not working on Owens' trial, and the length of the trial all militate against a finding of prejudice. While we sympathize with Owens' claim, absent a showing of actual prejudice, mere bad judgment on the part of the trial court is insufficient to merit a new trial.17

**E. Other Claims**

Owens also raised a number of other claims in his habeas petition, none of which merit more than a brief mention. Owens argues that the Government did not meet its obligations under *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) , when it failed to disclose the existence and substance of meetings that a state police officer had with a principal witness in the Government case, Anthony Lewis. Owens has repeatedly asked for this

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

information and the Government has repeatedly responded, under penalty of perjury, that it has disclosed all of the information regarding Lewis that it possesses. Owens offers no suggestion as to what this purported evidence might be, or where it might be found, and as such, we find that he cannot show that "[t]he evidence at issue [is] favorable to the accused, either because it is exculpatory, or because it is impeaching" or that "the evidence [has] been suppressed by the State." *Strickler* v. *Greene*, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999) .

Owens also argues that the trial court effectively amended the indictment in its instructions to the jury. The indictment against Owens alleged that he had "willfully and knowingly, and with deliberately premeditated malice aforethought and extreme atrocity and cruelty, murdered Rodney Belle." The jury charge was substantially abbreviated, telling the jury that they needed to find that Owens "willfully and knowingly" murdered Rodney Belle in order to find him guilty of violating 18 U.S.C. § 1959 (a)(1) . Owens did not object to the jury instructions and did not raise the claim on direct appeal, so it has been procedurally defaulted. Owens' attempt to show cause for the procedural default is nearly devoid of argument; he states simply, and without further explanation, that the claim was defaulted because he received ineffective assistance of counsel. It is a long-standing rule in this circuit that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States* v. *Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) . Even assuming that Owens has not waived this claim, he cannot prevail. Section 1959(a)(1) requires only that the defendant committed murder "as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity." 18 U.S.C. § 1959(a)(1) . There is no requirement anywhere in the statute that the murder be premeditated or atrocious. It is clear that "[a]s long as the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment, the right to a grand jury is not normally violated by the fact that the indictment alleges more crimes or other means of committing the same crime." *United States* v. *Miller*, 471 U.S. 130, 136, 105 S. Ct. 1811, 85 L. Ed. 2d 99 (1985) . Here, the indictment charged that Owens committed murder in furtherance of racketeering activity. The fact that the indictment also charged that Owens had committed a "premeditated and atrocious" murder is simply an allegation of "other means" of committing murder.

Owens claims that his trial counsel were ineffective because they failed to investigate an alibi proffered by his uncle, former Massachusetts State Senator William Owens. It was not until more than a year after Owens was arrested and after the trial had started that Senator Owens approached trial counsel regarding the alibi. In the midst of a harried trial, trial counsel did not immediately investigate the alibi. Once they investigated the alibi, Owens' trial counsel proposed to sandbag the prosecution with a new theory of the case in the middle of trial. The prosecution generously agreed to allow Owens to present the alibi defense so long as the prosecution was given an extra week to investigate and prepare a rebuttal case. Trial counsel declined the offer and never presented the alibi. It is clear that "counsel need not interview every possible witness to have performed proficiently." *Riley* v. *Payne*, 352 F.3d 1313, 1318 (9th Cir. 2003) ; *Lema*, 987 F.2d at 55 ("The decision to interview potential witnesses, like the decision to present their testimony, must be evaluated in light of whatever trial strategy reasonably competent counsel devised in the context of the particular case."). Even given trial counsels' admitted shortcomings, we do not find that they acted outside of the "wide range of reasonable professional assistance" in declining to interview a witness who, having been aware of the

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

charges pending against Owens for over a year, suddenly remembered an alibi after the trial had begun. *Strickland*, 466 U.S. at 689 .

Owens argues that his appellate counsel was ineffective for not more vigorously arguing on appeal that the trial court should have instructed the jury (as it announced it would) that in order to be convicted of a violation of 18 U.S.C. § 1962(c) ,18 the jury had to find that Owens participated in directing the affairs of the alleged criminal enterprise. Although appellate counsel pressed the argument, we rejected it, finding that "Owens has neither specified a defense theory the court's promise led him to forego, nor explained how his closing arguments would have differed had the court instructed in precise accordance with his request." *Owens*, 167 F.3d at 753 . We nonetheless noted that it was a "close question." *Id.* Many counsel fail to persuade us on close questions and we do not find that Owens' appellate counsel were constitutionally defective for having joined their ranks.

Finally, Owens argues that the trial court erred in sentencing him beyond the statutory maximum on three counts based on judicial factfinding, and that this violates the Supreme Court's decision in *Apprendi* v. *New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) . Owens concedes that *Apprendi* was decided after his conviction became final, and that we are barred from granting a habeas petition based on the retroactive application of law. *See Teague* v. *Lane*, 489 U.S. 288, 310, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989) ("[N]ew constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced."). Owens suggests that *Jones* v. *United States*, decided six months before his conviction became final, supports his argument that his sentence was wrongly imposed based on existing precedent. 526 U.S. 227, 119 S. Ct. 1215, 143 L. Ed. 2d 311 (1999) . In *Jones*, the Supreme Court found that a federal carjacking statute was composed of "three separate offenses by the specification of distinct elements, each of which must be charged by indictment, proven beyond a reasonable doubt, and submitted to a jury for its verdict." 526 U.S. at 251. Owens suggests that this conclusion stated the rule of law explained in *Apprendi*: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490 . However, *Jones* stated that the law on that subject was unclear. 526 U.S. at 251 ("[T]he Government's view would raise serious constitutional questions on which precedent is not dispositive."). Furthermore, two years later, in *Ring* v. *Arizona*, the Supreme Court reiterated that *Jones* resolved a statutory question, and not the constitutional question resolved in *Apprendi* and pressed here. 536 U.S. 584, 600, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002) . Accordingly, we find that Owens' *Apprendi* claim is barred by *Teague* .

### III. *Conclusion*

We recognize that Owens' high-profile trial would have proved challenging for any court. However, this trial was unnecessarily complicated by decisions of both the court and counsel. For the reasons stated herein, we reverse in part the decision of the district court denying Owens' petition for a writ of habeas corpus, and affirm it in part. We remand this case to the district court for further consideration as explained herein.

***Reversed in part; Affirmed in part; and Remanded.***

## Footnotes

Footnotes

1 A more elaborate version of the facts can be found in the opinion addressing Owens' direct appeal. *United States* v. *Owens*, 167 F.3d 739, 750-51 (1st Cir. 1999) .

2 According to the Government, the juror clarified that he was asking about the difference between state lawyers and federal lawyers.

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

3 Although the court found the petition to be untimely, it used its "equitable discretion" to exclude from the limitations period the time during which Owens' motion to appoint counsel to assist in habeas relief was pending. Thus, the district court concluded that Owens' petition was timely. Although we express no opinion as to whether it was proper, neither party has raised this issue on appeal, and we do not disturb this aspect of the district court's decision.

4 The petition was referred to Judge Young, who presided over Owens' trial. Judge Young rendered a decision on all of Owens' claims except his claim regarding the swearing-in ceremony for the AUSA. This claim was referred to Judge Gertner, who was uninvolved in Owens' trial. Judge Gertner rendered a separate decision denying Owens' claim regarding the swearing-in ceremony.

5 The district court granted habeas relief on Owens' *ex post facto* claim. Owens had argued that he was sentenced to life imprisonment for engaging in interstate travel in furtherance of racketeering, 18 U.S.C. § 1959(a)(2) , whereas the maximum sentence at the time he committed this crime was five years imprisonment. The district court concluded that Owens' sentence on this count violated the *ex post facto* clause of the Constitution, and reduced his sentence accordingly. *See United States* v. *Molina*, 407 F.3d 511, 525 (1st Cir. 2005) ("[B]efore any criminal liability can attach, a person must be put on notice of both the criminal proscription and the potential punishment therefor.").

6 In addition, a petitioner's procedural default may be excused by a showing of actual innocence. *Bousley* v. *United States*, 523 U.S. 614, 622, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998) . Owens has not attempted to make such a showing.

7 A district court may also deny an evidentiary hearing when "the motion is inadequate on its face." *David*, 134 F.3d at 477 . Neither party suggests that is the case here.

8 Specifically, in his petition for § 2255 relief, Owens states that he "would have testified that he did not have any role in the murders charged."

9 We note that on habeas review, a court may assess the credibility of the defendant's assertion that he would have testified in light of the evidence presented at trial and the evidence that could have been admitted if the defendant had testified. *See Mullins*, 315 F.3d 449, 456 (5th Cir. 2002) (suggesting that a defendant would not likely have testified because his "extensive criminal record and drug use would have come into evidence").

10 We note that we are not deciding that trial counsel must go through any specific routine or formal waiver process. *See Taylor* v. *United States*, 287 F.3d 658, 662 (7th Cir. 2002) ("Nothing in the Constitution . . . justifies meddling with the attorney-client relationship by requiring advice to be given in a specific form or compelling the lawyer to obtain a formal waiver."). We decide only that counsel must have some sort of conversation with his or her client informing him or her of the right to testify so that the client can make a knowing and informed decision regarding that right.

11 The court below stated that "no closure occurred in the instant case," but seemed to indicate that some spectators were barred when it noted that "it also implicitly intended for any spectators to replace jurors in the gallery as the seats became available."

12 Owens argues that the absence of his family and friends at trial raises special concerns. *See In re Oliver*, 333 U.S. at 272 . However, we have decided that the same standard applies to family members as to the general public: "Nothing . . . suggests that a trial court need go beyond the already stringent requirements of *Waller* before removing a defendant's family members from the courtroom." *Martin* v. *Bissonette*, 118 F.3d 871, 876 (1st Cir. 1997) .

13 Owens must make two showings of prejudice. First, Owens must show that

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

counsel's failure to object to the trial closure prejudiced him for the purposes of determining whether there was ineffective assistance of counsel. *Strickland*, 466 U.S. at 688 . Second, Owens must also show prejudice to excuse his procedural default on the public trial claim. *Knight*, 37 F.3d at 774 . We believe that these showings of prejudice overlap, and we resolve them simultaneously. *Cf. Strickler* v. *Greene*, 527 U.S. 263, 282, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999) ("In this case, cause and prejudice [for procedural default] parallel two of the three components of the alleged [trial error] itself.").

14 We acknowledge that in *Purvis* v. *Crosby*, the Eleventh Circuit found that counsel's failure to object to a *partial* trial closure was not prejudicial. 451 F.3d at 738 . The Eleventh Circuit held that it could not "dispense with the prejudice requirement for attorney error of this type without defying the Supreme Court's clear holding that except in three limited circumstances, which are not present here, a defendant must show that any error his counsel committed 'actually had an adverse effect on the defense.'" *Id.* at 741 . As we have explained, this holding is in tension with the Supreme Court's pronouncement that prejudice is presumed in cases of structural error not because the risk of prejudice is high, but because it is impossible to determine the extent of the prejudice. In addition, the Eleventh Circuit relied upon *Francis* v. *Henderson*, in which the Supreme Court held that where a habeas petitioner who had defaulted on a claim of racial bias in jury selection, normally a structural error, still needed to establish actual prejudice to excuse the procedural default. 425 U.S. 536, 542, 96 S. Ct. 1708, 48 L. Ed. 2d 149 (1976) . We believe that the holding of *Francis* has been substantially weakened by the Supreme Court's subsequent pronouncement in *Fulminante*, *Sullivan*, and *Neder* that prejudice is impossible to quantify in cases of structural error.

In addition, in *Ward* v. *Hinsley*, the Seventh Circuit found that a claim of structural error did not excuse a habeas petition from demonstrating "prejudice" from the error to excuse procedural default. 377 F.3d 719, 726 (7th Cir. 2004) ; *see also Hatcher* v. *Hopkins*, 256 F.3d 761, 764 (8th Cir. 2001) . However, the Seventh and Eighth Circuits stated that their concern arose because "[t]he procedural default doctrine is 'grounded in concerns of comity and federalism,'" and bypassing the prejudice analysis in claims of structural error would deny state courts their role in enforcing federal rights. *Ward*, 377 F.3d at 726 (quoting *Coleman*, 501 U.S. at 730 ); *Hopkins*, 256 F.3d at 764 (emphasizing that structural error does not bypass "a *state-law* procedural default in a § 2254 petition" (emphasis added)). To the extent that comity and federalism concerns might justify the requirement that a petitioner show prejudice arising out of a structural error, they do not exist here, where Owens is petitioning from a conviction in federal court.

15 It is unclear whether the district court held an evidentiary hearing on this claim. Thus, we take the petitioner's credible allegations as true. *Ellis*, 313 F.3d at 641 .

16 The district court also determined that because the swearing-in ceremony did not constitute reversible error, Owens' appellate counsel's failure to raise this claim did not constitute ineffective assistance of counsel.

17 Because Owens has failed to show actual prejudice resulting from the swearing-in ceremony, we need not reach the question of whether his trial counsel's failure to raise the issue on appeal would constitute ineffective assistance of counsel to excuse the procedural default.

18 18 U.S.C. § 1962(c) provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.