IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | CA No. 99-489T |
| v. | ) | CR No. 95-029T |
| | ) | |
| | ) | |
| GERARD T. OUIMETTE | ) | |

GOVERNMENT'S OBJECTION TO DEFENDANT'S HAZEL-ATLAS MOTION

Comes now the United States of America, by and through its attorneys, Robert Clark Corrente, United States Attorney, and Kenneth P. Madden, Assistant U. S. Attorney, and objects to the Defendant's Hazel-Atlas Motion for those reasons stated in the accompanying memorandum.

Respectfully submitted,

ROBERT CLARK CORRENTE
UNITED STATES ATTORNEY

/s/ Kenneth P. Madden
Kenneth P. Madden
Assistant U. S. Attorney
RI Bar No. 1680
U. S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
401-709-5000
401-709-5001 (fax)

CERTIFICATION

I hereby certify that on the 18th day of July, 2008, I electronically filed and served, by ordinary mail with postage prepaid, the Within Government's Objection To Defendant's Hazel-Atlas Motion, to:

Gerard T. Ouimette
Reg. No. 02519-070
USP - Federal Correctional Complex
P. O. Box # 33
Terre Haute, IN 47808-0033

/s/ Kenneth P. Madden

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | CA No. 99-489T |
| v. | ) | CR No. 95-029T |
| | ) | |
| | ) | |
| GERARD T. OUIMETTE | ) | |

GOVERNMENT'S MEMORANDUM IN SUPPORT OF ITS
OBJECTION TO DEFENDANT'S HAZEL-ATLAS MOTION

## I. INTRODUCTION

Petitioner/Defendant Gerard T. Ouimette (Ouimette or Defendant) files a motion which he terms a Hazel-Atlas motion alleging that officers of the Court and/or their agents committed a fraud against the Court. He seeks an "evidentiary hearing" and "such other such relief as the Court deems appropriate and just." Specifically, in his motion, Oiumette claims that officers of the Court engaged in a conspiracy to "frame petitioner...in order to secure a conviction of extortion." Petitioner's Memorandum at p. 10. To support his motion, Defendant attaches affidavits from himself, Terrence M. McDonough, Richard Barone, Paula Cappola Bianco, and an unsigned one-page document purported to be from Paul Calenda entitled "Affidavit Of Paul

Calenda." He also attaches a letter to Leonard O'Brien, Esq. signed by Paul A. Calenda.

This motion should be denied without an evidentiary hearing. The government attorneys in this matter did not engage in any conduct, which under any standard, could be considered a fraud upon This Court. Further, this motion is essentially a second or successive § 2255 motion. Finally, the allegations made by Ouimette do not fall within the holding of Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 64 S.Ct. 997 (1944).

II. TRAVEL

On October 26, 1995, Ouimette was convicted by a jury of three counts of violating 18 U.S.C. § 894 (conspiracy to collect extensions of credit by extortionate means). Cr. No. 95-029T. Pursuant to 18 U.S.C. § 3559(c), Ouimette was sentenced on February 7, 1996 to life imprisonment. A notice of appeal was filed on February 9, 1996. A motion for a new trial was filed on July 17, 1996. The motion was denied on October 25, 1996. A notice of appeal was filed October 28, 1996.

On May 14, 1997, the Court of Appeals remanded the matter to the District Court for the District Court to conduct a hearing into Ouimette's Sixth Amendment claim concerning courtroom security. The hearing was held, and

the Court made findings of fact which were transmitted to the Court of Appeals.

On March 3, 1998, Ouimette's conviction and sentence were affirmed by the Court of Appeals. The Supreme Court denied his petition for certiorari on October 5, 1998.

On or about October 4, 1999, Ouimette deposited in the U. S. mails a motion pursuant to 28 U.S.C. § 2255. C.A. No. 99-489T. This filing raised nine grounds: 1) the Court's jury instructions constructively amended the indictment; 2) prosecutorial misconduct; 3) the use of unconstitutional state convictions by the Court to impose a "three-strikes" sentence of life imprisonment; 4) the Court's jury instructions omitted an element of an offense charged; 5) the sufficiency of the indictment as to Count I; 6) the sufficiency of the indictment as to Counts III and IV; 7) a witness's testimonial reference to Ouimette's prior incarceration; 8) the government's failure to prove statements made in its opening; and 9) ineffective assistance of trial and appellate counsel to raise these issues. Subsequent to this filing, on October 16, 1999, Ouimette deposited in the U. S. mails the following documents: Motion For Leave To Supplement 28 U.S.C. 2255 Motion; Supplemental Issue With Incorporated Memorandum Of Points And Authorities For Consideration Pursuant To 28

U.S.C. 2255; Motion For Order To Insure Availability Of Material Witnesses; Affidavit Of Gerard Ouimette; and Request For Discovery Re: Motion Pursuant To 28 U.S.C. 2255. The Supplemental Issue With Incorporated Memorandum Of Points And Authorities alleged that two named witnesses[1] testified falsely at Ouimette's trial and that the government knowingly failed to correct the testimony.

The government responded on October 25, 1999 and also filed a supplemental memorandum on November 9, 1999. On or about December 3, 1999, Ouimette filed a response in opposition and a motion for an evidentiary hearing.

On or about July 3, 2000, Ouimette filed a Motion To Withhold Adjudication On Grounds Three And Nine. These grounds had been raised in his motion filed on or about October 4, 1999. The government objected on June 30, 2000.

On or about August 25, 2000, Ouimette filed a Motion requesting that his § 2255 petition "Be Placed In Abeyance For A Period Of Thirty (30) Days" to allow him to file a supplemental brief addressing the applicability of Apprendi v. New Jersey, 530 U.S. 466 (2000), to his case. The government objected. On September 25, 2000, he filed a Supplemental Memorandum in support of his § 2255 motion raising the Apprendi issue. The government responded on

[1] Ouimette identified the witnesses as James Gellerman and Bobbi Jo Dumont.

September 28, 2000. Ouimette responded to the government's objection on December 7, 2000

On December 12, 2000, this Court issued an Order denying the Request For Discovery (12/16/99); denying a Motion To Submit Audio Tapes For In Camera Review; denying a Motion For Order To Insure Availability Of Material Witnesses (12/16/99); denying the motion raising the Apprendi claim (9/25/2000); and denying his motion to hold his § 2255 motion in abeyance for thirty days (8/25/2000).

On June 21, 2001, the Court denied Ouimette's § 2255 motion. The Court rejected the Ouimette's supplemental claims filed on or about October 16, 1999 as barred by the one-year statute of limitations found within § 2255. The Court also rejected the original claims of insufficiency of the indictment, prosecutorial misconduct, prejudicial comments by the prosecution and witnesses, erroneous jury instructions, sentencing errors, and ineffective assistance of counsel.

Ouimette filed a notice of appeal. He then moved this Court to issue a certificate of appealability. That motion was denied by the Court on September 20, 2001. The Court of Appeals denied his request for a certificate of appealability on February 21, 2002. The mandate issued April 18, 2002.

On or about April 2, 2008, Ouimette filed a motion pursuant to Fed. R. Civ. P. 60(b)(6) to re-open his previously denied § 2255 proceedings. That motion is pending.

## III. ARGUMENT

### A. Ouimette's filing is a second or successive § 2255 motion

Regardless of the label Ouimette places on this latest filing, it is the functional equivalent of a motion filed under the authority of 28 U.S.C. § 2255. Ouimette is a sentenced federal prisoner. In his Hazel-Atlas motion, he argues or implies, in essence, that trial witnesses and cooperating persons testified falsely, fabricated events and conversations, and distorted his words, and did all of this at the behest of officers of the Court. This is nothing more than a new attack upon the integrity of his underlying conviction. It is a direct challenge to the constitutionality and or validity of that conviction. It is a claim that should have been raised on appeal or in his first § 2255 motion. This is nothing more than an attempt to circumvent the gate-keeping requirements for second or successive § 2255 motions.

As Ouimette has already filed one § 2255 motion, this filing is deemed a second or successive motion. Section 2255 states, in part:

> A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain -
>
> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
>
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

Local Rule 22.2 of the First Circuit Court of Appeals mandates that a second or successive § 2255 motion filed in the District Court without authorization of the Court of Appeals be transferred to the Court of Appeals or be dismissed by the District Court. See, United States v, Barrett, 178 F.3d 34, 41 and n.1 (1st Cir. 1999). The decision whether to transfer or dismiss appears to be discretionary. Because Ouimette has not met the requirements for successive habeas petitions under § 2255 and his claims are totally devoid of merit, this Court, in the exercise of its discretion, should dismiss the motion.

B. Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 64 S.Ct. 997 (1944)

Even if the Court were to conclude that Ouimette's

Motion is not a second or successive § 2255 motion, his motion should be denied.

In Hazel-Atlas, the Supreme Court held that where there was a fraud upon the Court, the Court of Appeals had both the duty and the power to vacate its own judgment, even though the request for relief was untimely. 322 U.S. at 249-250, 64 S.Ct at 1003. In describing the fraud as one perpetrated by officers of the Court, the Court distinguished that claim for relief from one where the judgment was procured by a witness who committed perjury. 322 U.S. at 245, 64 S.Ct. at 1001. The Court noted this power to vacate had been cautiously exercised in the past where injustices were "sufficiently gross" and "enforcement of the judgment [was] manifestly unconscionable." 322 U.S. at 244-245, 64 S.Ct. at 1000.

An independent action is available only to prevent a grave miscarriage of justice. United States v. Beggarly, 524 U.S. 38, 47, 118 S.Ct. 1862, 1868 (1998). The "fraud cognizable to maintain an untimely independent attack upon a valid and final judgment has long been regarded as requiring more than common law fraud." Geo. P. Reintjes Co., Inc. v. Riley Stoker Corp. 71 F.3d 44, 48 (1st Cir.

1995). See also, United States v. 6 Fox Street, 480 F.3d 38, 46 (1st Cir. 2007).[2]

To constitute fraud upon the court, there must be "1) an intentional fraud; 2) by an officer of the court; 3) which is directed at the court itself; an 4) in fact deceives the court." Herring v. United States, 424 F.3d 384, 386 (3rd Cir. 2005). "Generally speaking, only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute fraud on the court. . . Less egregious misconduct such as nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court." Rozier v. Ford Motor Co., 573 F.2d 1332, 1338 (5th Cir. 1978). The burden is the proponent by clear and convincing evidence to show fraud upon the court. Weese v. Schukman, 98 F.3d 542, 552 (10th Cir. 1996); Herring v. United States, 424 F.3d at 387 (clear unequivocal and convincing evidence). See also, Perez-Perez v. Popular Leasing Rental, 993 F.2d 281, 285 (1st Cir.

[2] Ouimette is time-barred from making a motion under Fed. R. Civ. P. 60(b). A motion under Rule 60(b)(3) must be made within 1 year from the date of the judgment. A motion under Rule 60(b)(6) must be made within a reasonable time. Harris v. United States, 522 F.Supp.2d 199, 201-202 (D.D.C. 2007). As the government argued in its response to Ouimette's motion to re-open his § 2255 motion, a delay of almost 7 years after the decision of the District Court to file a Rule 60(b) motion is an unreasonable period of time under anyone's analysis. See, United States v. Deutsch, 981 F.2d 299, 302 (7th Cir., 1992) (2 years unreasonable); Rollen v. United States, 125 F.Supp.2d 877, 879 (C.D.Ill., 2000) (5 years not reasonable); Tarascio v. United States, 198 F.R.D. 321, 325 (D.Conn., 2000) (22 months not reasonable).

1993); Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989).

The affidavits and “documents” submitted by Ouimette not only do not constitute clear, unequivocal, and convincing evidence of fraud, they do not establish even a scintilla of evidence of fraud upon the Court. Ouimette’s 20-page affidavit makes no mention of prosecutors or law enforcement officers until the end of page 19 where he states “Post trial I discovered that the FBI coerced Gina Gauvin . . . into claiming there was a table cloth on the table when the incident took place and then when she came out of her dressing room which was located in the back, the table cloth was missing.” The transcripts of the trial show that Ms. Gauvin did not testify, though she did testify in Grand Jury.

Richard Barone’s affidavit states that he told Heather Fritz to leave town in order to minimize the involvement of Robert DeLuca, Jr. Barone does not even suggest that prosecutors or law enforcement officers had any involvement in the departure of Heather Fritz. Further, Terrence McDonough’s affidavit merely recites his efforts to locate Ms. Fritz. He makes no claim that prosecutors or law enforcement officers had any involvement in his inability

to locate her. Ms. Fritz, Mr. Barone, and Mr. McDonough did not testify at trial.

Calenda's unsigned and undated "affidavit" states that his testimony was false and that Robert Buehne made false statements to Calenda with the knowledge of a police detective so as to "scar[e] [Calenda] into testifying." In his letter dated January 15, 1996, Calenda made several statements that he believed that the prosecution "was nothing more than a BIG SETUP by the police and government and their so-called informants," but provides neither facts corroborating his conclusions nor the basis for his knowledge. Though Calenda testified at Grand Jury, he did not testify at trial.

In the affidavit of Paula Cappola Bianco, who did testify at the trial, she states that she lied in her testimony concerning threats by Ouimette. She claims that "[Ouimette] was a victim of a scheme perpetrated by Robert Buehne" and that "this whole plan was hatched by Robert Buehne to frame Gerard Ouimette." While at one point she describes Robert Buehne as an agent for a police detective, she never names any prosecutor or law enforcement officer as being a participant in this plan or scheme to "frame" Ouimette.

In sum, these affidavits and documents provide no grist for the Hazel-Atlas mill.

Further, Cappola Bianco's affidavit and Calenda's statements are totally lacking in reliability and credibility. The First Circuit has recognized that recantations are "viewed with considerable skepticism." United States v. Connolly, 504 F.3d 206, 214 (1st Cir. 2007); United States v. Carbone, 880 F.2d 1500, 1502 (1st Cir. 1989). This should be particularly so where the defendant delayed presenting the recantation statements until after the statute of limitations for perjury had expired. Furthermore, the strength of the government's case against Ouimette was overwhelming and corroborated Cappola's testimony. James Gellerman testified that Ouimette demanded $125,000 from Calenda and also inquired about a restaurant owned by Calenda. Gellerman testified that Ouimette ordered him to see Calenda, give him a "crack," and tell him he has to pay $50,000. Gellerman further testified that on the orders of Ouimette, he visited Calenda, hit him in the head, and told him he had to pay. A meeting between Calenda and Ouimette was recorded on video during which Ouimette told Calenda that a $5000 payment would be satisfactory and that Calenda had Ouimette's word that Robert DeLuca would not send anyone

else to visit Calenda. Ouimette also described to Calenda the beating of Duxbury by Gellerman. A meeting among Robert Buehne, Coppola, and Ouimette was audio recorded. During the recorded meeting, Ouimette told Buehne to tell Calenda that if Calenda did not come up with more money, "it's open season on him." Ouimette also threatened to blow up Calenda's garage and car with a "howitzer" and to break the legs of Calenda's houseboy. Further, a federal agent testified to the seizure of cash from Ouimette's home. Some of the serial numbers on these bills matched the serial numbers of currency earlier given to Ouimette as part-payment of the supposed debt owed by Calenda.

Both Gellerman and David Duxbury testified to an extortion that occurred in the basement of the Satin Doll club. Duxbury and Gellerman testified that Ouimette accused Duxbury of attempting to shake down Robert DeLuca, Jr. Gellerman testified he struck Duxbury in the face several times and that either Ouimette or Kenneth Raposa told Duxbury he was fined $5000. Duxbury testified that Ouimette slapped him and demanded $5000.

Further, while the Supreme Court in Hazel-Atlas, 322 U.S. at 246, 64 S.Ct. at 1001, noted that the failure to exercise the highest degree of due diligence should not act as a bar to an independent action for fraud on the court,

according to Ouimette and on the face of the documents he offers, it is clear he was well-aware of the information he wished to present as early as November 1995.[3] However, Ouimette did not raise this information prior to his sentencing, in his appeal, or in any of his previous post-trial filings, preferring instead to sit on the information until twelve years had passed obviously hoping to gain any advantage which might accrue with the passage of considerable time. This delay certainly casts a further cloud over the credibility and reliability of his own affidavit and the other documents he offers. Capolla's long-after-the-fact recantation and the other proffered documents are of no value.

C. An evidentiary hearing

Ouimette's request for an evidentiary hearing should be rejected out-of-hand. Ouimette fails to offer any information, beyond supposition and groundless accusations, which could be considered reliable and credible under any standard. His allegation of perjured testimony is contradicted by the record and by common sense. There is not even an allegation that attorneys for the government

[3] At page 18 of his affidavit, Ouimette states: "I found out two weeks after I was convicted that Paul Calenda's wife had made the two calls trying to warn me to leave town before I got into trouble, she knew they were trying to frame me." Likewise, Calenda's letter is dated January 15, 1996.

engaged in a fraud upon the Court. An evidentiary hearing is not warranted.

D. Conclusion

Government attorneys did not engage in a fraud upon this Court. Ouimette's conviction is well-supported by substantial, credible evidence. The Hazel-Atlas motion should be denied.

Respectfully submitted,

ROBERT CLARK CORRENTE
UNITED STATES ATTORNEY

/s/ Kenneth P. Madden
Kenneth P. Madden
Assistant U. S. Attorney
RI Bar No. 1680
U. S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
401-709-5000
401-709-5001 (fax)

Shannon L. VanNorman
Law Student

CERTIFICATION

I hereby certify that on the 18th day of July, 2008, I electronically filed and served, by ordinary mail with postage prepaid, the Within Government's Memorandum In Support Of Its Objection To Defendant's Hazel-Atlas Motion, to:

Gerard T. Ouimette
Reg. No. 02519-070
USP - Federal Correctional Complex
P. O. Box # 33
Terre Haute, IN 47808-0033

/s/ Kenneth P. Madden