# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| vs. | : | CA No. 99-489-ML |
| | : | (CR No. 95-029-ML) |
| GERARD T. OUIMETTE | : | |

## MEMORANDUM AND ORDER DENYING HAZEL-ATLAS MOTION

Mary M. Lisi, Chief United States District Judge

Gerard T. Ouimette has filed a so-called 'Hazel-Atlas Motion'[1] alleging that his 1995 conviction on extortion charges in this Court was obtained by fraud on the court. For the reasons that follow, the motion must be denied.

### I.    BACKGROUND AND TRAVEL

The facts and travel of this matter concerning the trial and postconviction proceedings pertinent to Ouimette's underlying conviction are detailed in this Court's Memorandum and Order addressing Ouimette's motion to reopen his §2255 proceedings, discussed infra, and will not be repeated here. Briefly, Ouimette was convicted in 1995 of extorting money from David Duxbury at the Satin Doll Club and, separately, of extorting the repayment of a debt allegedly owed by Paul Calenda to Robert DeLuca, Sr., all in violation of 18 U.S.C. § 894 and 2. He was sentenced to life imprisonment without parole, and his conviction and sentence were affirmed on appeal. His motion to vacate or set aside sentence pursuant to 28 U.S.C. §2255 was denied, and both this Court (Torres, J.) and the First Circuit Court of Appeals denied his request for a certificate of appealability (COA).

---

[1]   Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944), overruled on other grounds, Standard Oil Co. of California v. United States, 429 U.S. 17 (1976). The case is discussed infra.

See United States v. Gerard Ouimette, Dkt. No. 012066, Judgment at 2 (1st Cir. Feb. 21, 2002) ("2/21/02 Judgment").

Some six years later, Ouimette filed a Motion to Reopen 2255 Proceedings pursuant to Fed. R. Civ. P. 60(b)(6), seeking relief from the Judgment denying his initial motion to vacate sentence, which motion the Government opposed. That motion is addressed in a separate Memorandum and Order issued by this Court on this date. See Memorandum and Order Denying Motion to Reopen (Doc. #101) ("5/6/10 Mem. & Order").

While the motion to reopen was pending, Ouimette filed the instant "Hazel-Atlas" motion, alleging that various court officers and law enforcement officials conspired to frame him and in doing so committed fraud upon the court.[2] The Government has objected, and Ouimette filed a reply and several supplemental filings in support of this motion. This matter is now ready for decision.[3]

## II.   DISCUSSION

### A.   Nature of Motion

As a threshold matter, the Government argues that the instant Hazel-Atlas motion should be deemed a second or successive §2255 motion and that as such, it should be dismissed due to the lack of prior authorization from the Court of Appeals. Ouimette concedes that he has already filed a §2255 motion that was denied by this Court in June 2001. If the motion is deemed to be second or

---

[2]   The "officers of the court" listed in the motion include: Sheldon Whitehouse, former United States Attorney for the District of Rhode Island; James Leavey, former First Assistant United States Attorney; and Kenneth P. Madden, Assistant United States Attorney. (Hazel-Atlas Motion at 8.)

[3]   Although Ouimette has requested a hearing on his motion, no hearing is required in connection with any issues raised by the instant motion given this Court's disposition of the motion herein. Cf. David v. United States, 134 F.3d 470, 477 (1st Cir. 1998) (no hearing required where files and records of case conclusively establish that the claims asserted in the motion are without merit); Owens v. United States, 483 F.3d 48, 57 (1st Cir. 2007) (same).

successive, this Court may not consider the motion absent authorization from the Court of Appeals. See 28 U.S.C. § 2255(h); Munoz v. United States, 331 F.3d 151, 152-153 (1st Cir. 2003).

Ouimette insists that his Hazel-Atlas motion is not intended to be brought under §2255 but rather as a separate motion asserting fraud on the court. (See Reply at 2.) He subsequently sought to have his claim considered as an independent action (see Supp. to Pet. Hazel-Atlas Motion [Doc. #66] at 2).[4] This Court could construe the instant Hazel-Atlas motion itself as asserting an independent action for fraud. See Fed. R. Civ. P. 60(d)(1) ("This rule does not limit a court's power to: (1) entertain an independent action to relieve a party from a judgment, order, or proceeding"). See also Barrett v. United States, 2006 WL 3248396 at *7 (N.D.N.Y. Nov. 7, 2006) (discussing Hazel-Atlas decision and savings clause of Rule 60(b) as "coextensive authority" for bringing an independent action alleging fraud upon the court claims". However, because as discussed infra, Ouimette's claims of fraud on the court are in any event without merit, this Court considers the motion as one for relief from judgment under Fed. R. Civ. P. 60(b)(6) and determines that it must be denied, for the reasons that follow. See United States v. Webster, 2009 WL 779806 at *3 (N.D.Ill. Mar. 20, 2009) (ruling on motion to set aside judgment allegedly procured by fraud upon the court).[5]

B.   Fraud on the Court Claim

In his motion, Ouimette claims that certain officers of the Court and/or their agents engaged in a conspiracy to deceive the Court and to "frame [him] . . . in order to secure a conviction of

---

[4] Ouimette correctly concedes that Fed.R.Civ.P. 60(b)(3), authorizing relief from judgment obtained by fraud of an opposing party, does not apply to his motion, as motions under that provision must be brought within one year of entry of judgment. See Fed. R. Civ. P. 60(c)(1).

[5] This Court is mindful that it has previously denied Ouimette's motion (Doc. #65) for assignment of an independent civil action number to his Hazel-Atlas motion. See Text Order dated January 29, 2010.

3

extortion." (See Hazel-Atlas Motion at 10.)   In support of his motion, Ouimette has submitted

affidavits by Terrence M. McDonough, Richard Barone, Paula Cappola Bianco, Paul Calenda and

himself.   He also attaches a letter from Paul A. Calenda to Leonard O'Brien, Esq., as well as

transcripts of recorded conversations of two other witnesses. Invoking Hazel-Atlas Glass Co. v.

Hartford-Empire Co., supra, he seeks an "evidentiary hearing" and "such other such relief as the

Court deems appropriate and just." (Id. at 13.)

In Hazel-Atlas[6] the Supreme Court held that where there was a fraud upon the Court, the

Court of Appeals had both the duty and the power to vacate its own judgment, even though the

request for relief was untimely. 322 U.S. at 249-250.  The Court distinguished between a judgment

resulting from fraud perpetrated by officers of the Court and a judgment procured by a witness who

committed perjury, and further noted that the power to vacate should be exercised only where

injustices were "sufficiently gross" and "enforcement of the judgment [was] manifestly

unconscionable."  Id. at 244-245.  As stated in a subsequent decision, such an independent action

is available only to prevent "a grave miscarriage of justice." United States v. Beggarly, 524 U.S. 38,

47(1998).

The First Circuit has noted that "fraud cognizable to maintain an untimely independent attack

upon a valid and final judgment has long been regarded as requiring more than common law fraud."

George P. Reintjes Co., Inc. v. Riley Stoker Corp. 71 F.3d 44, 48 (1st Cir. 1995).   Such fraud

consists of an "unconscionable scheme calculated to interfere with the judicial system's ability

impartially to adjudicate a matter," involving an officer of the court. Id. at n. 5 (quoting Aoude v.

---

[6]   Hazel-Atlas involved a petition to reopen a judgment obtained by Hartford from the Court of
Appeals in a patent infringement suit.  The Supreme Court granted relief and set aside the judgment
when it was found that it was obtained by fraudulent evidence engineered by in-house counsel for
Hartford and relied upon by the Court of Appeals in initially granting relief. 322 U.S. at 240-42.

Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir.1989).[7]  Moreover, "[t]he cases in which it has been

found that there was, or might have been, a 'fraud upon the court,' for the most part, have been cases

in which there was 'the most egregious conduct involving a corruption of the judicial process itself.'"

Roger Edwards, LLC v. Fiddes & Son Ltd., 427 F.3d 129, 133 (1st Cir. 2005) (quoting Wright,

Miller & Kane, Federal Practice and Procedure, § 2870, at 418.)[8]  See also Herring v. United States,

424 F.3d 384, 386 (3d Cir. 2005) (To constitute fraud upon the court, there must be "(1) an

intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) in fact

deceives the court.") (emphasis added); id. n.1 (discussing various descriptions of fraud on the

court).  In addition, fraud on the court must be shown by clear and convincing evidence.  Aoude, 892

F.2d at 1118.

        Here, this Court reviews the affidavits and related exhibits and transcripts submitted by

Ouimette in support of his motion.  As a preliminary matter, this Court notes that two of the

affidavits consist primarily of recantations by witnesses, which "'are generally viewed with

considerable skepticism.'"  United States v. Connolly, 504 F.3d 206, 214 (1st Cir. 2007) (quoting

United States v. Carbone, 880 F.2d 1500, 1502 (1st Cir. 1989)).

---

[7]    While the courts have differed, see United States v. Smiley, 553 F.3d 1137, 1141-44 (8th Cir.
2009) (discussing split in circuit authority), it appears that an action or claim of fraud on the court may be
brought in a criminal case as well as a civil case.  See United States v. Smith, 331 U.S. 469, 476 n. 4
(1946) (noting in criminal case that federal courts have power to investigate whether a judgment was
obtained by fraud and make whatever modification is necessary at any time.").  Because the claims
asserted here clearly do not warrant relief, this Court will assume without deciding that such a claim
could be made in connection with a criminal judgment.  See Smiley at 1144 ("We need not and will not
determine in this case whether a district court has a historically recognized inherent power to vacate
criminal judgments procured by fraud or whether such power has been abrogated by Congress, because
even if this inherent power still exists any misrepresentations made in this case would not justify vacating
the sentence.").

[8]    Wright, Miller and Kane give as examples the "bribery of a judge" or the use of counsel to
exert improper personal influence on the court.  Id. at 418-19.

5

Ouimette's affidavit[9] consists of a narrative stream of largely self-serving, conclusory, and frequently irrelevant, statements concerning his interactions with the various victims and/or participation in the two extortions of which he was convicted. The 20-page affidavit makes no mention of prosecutors or law enforcement officers until page 19, when he states "Post trial I discovered that the FBI coerced Gina Gauvin [a Satin Doll Club employee] . . . into claiming there was a table cloth on the table when the incident [involving Duxbury] took place[,] and then when she came out of her dressing room[,] which was located in the back, the table cloth was missing." (Ouimette Aff. at 19.)[10] Ouimette offers no details supporting this point, which relates to whether there was blood (presumably Duxbury's) on the table cloth. The record shows that Ms. Gauvin did not testify at trial. Although Ms. Gauvin did testify before the Grand Jury, neither Ouimette's affidavit nor any of the other affidavits address her specific testimony in that forum. Thus, Ouimette's affidavit does not assist him on this claim.

Richard Barone's affidavit states that he told Heather Fritz -- another Satin Doll employee present on the night of the Duxbury incident -- to leave town in order to minimize the involvement of Robert DeLuca, Jr. (See Barone Aff. at ¶¶5-6.) Barone does not even suggest that prosecutors or law enforcement officers had any involvement in the departure of Heather Fritz. Likewise,

---

[9] Affidavit of Gerard T. Ouimette dated June 12, 2008 (Doc. #46). This affidavit is separate from Ouimette's April 2, 2008 affidavit mentioned in connection with his motion to reopen. See 5/6/10 Mem. & Order at 7.

[10] As authority for this statement, Ouimette's affidavit cites a transcript of a recorded conversation between Ms. Gauvin and unidentified female, a copy of which is included in the papers in support of his motion. (See Taped Transcription for John Ouimette, entitled "Gina G.," Exhibit B to Ouimette Aff. ) Even taken at face value, the transcript merely shows Ms. Gauvin discussing being questioned by law enforcement officials. The transcript makes no reference to any of the named officers of the court who are the subject of the instant motion, nor does it contain any specific statement by Ms. Gauvin that she testified falsely in any forum.

investigator Terrence McDonough's affidavit merely recites his efforts to locate Ms. Fritz. He makes no claim that prosecutors or law enforcement officers had any involvement in his inability to locate her, nor is there any evidence as to what Ms. Fritz would have said had she been located. Neither Barone nor McDonough testified at trial.

The affidavit of Paul Calenda[11] states that testimony he gave was false and that Robert Buehne made false statements to Calenda with the knowledge of a police detective "as a means of scaring"[Calenda] into testifying." (Calenda Aff., Exh. B to Ouimette Aff., para. 2.) In his unsworn letter to Leonard O'Brien, Esq., dated January 15, 1996 (copy included in Exh. B to Ouimette Aff.), Calenda states that he believed that the prosecution "was nothing more than a BIG SETUP by the police and government and their so-called informants," but provides neither facts corroborating his conclusions nor the basis for his knowledge. While Calenda's affidavit states that his testimony before the grand jury was false, neither his affidavit nor his letter mentions any officers of the court. The Government points out -- without dispute from Ouimette -- that although Calenda testified before the grand jury, he did not testify at trial.

Ouimette also offers the affidavit of Paula (Cappola) Bianco, who did testify at the trial. In her affidavit, Bianco states that she lied in her testimony concerning threats made by Ouimette against Paul Calenda. She claims that "[Ouimette] was a victim of a scheme perpetrated by [her then boyfriend] Robert Buehne" and that "this whole plan was hatched by Robert Buehne to frame Gerard Ouimette." According to Bianco, Buehne made false statements about Ouimette and committed

---

[11]     Although the Government asserts that this affidavit is unsigned and undated, the Calenda affidavit in the Court file contains a second page containing a signature of "Paul A. Calenda" that purports to have been notarized on July 31, 2007. This Court notes that there is nothing on this signature page connecting it to the previous page (other than its location) and that the notary section fails to state when the notary's commission expires. Nonetheless, as discussed herein, even taking this affidavit at face value, it falls short.

harmful acts (extortion and destruction of property) against Calenda and his wife, all with the purpose of attempting to "frame" Ouimette.

The Bianco affidavit falls short in two respects. First, perjury by a witnesses, standing alone, is not sufficient to constitute fraud upon the court. Rientjes, 71 F.3d at 49. As the Government notes, other witnesses testified against Ouimette, and the Government played audio and video recordings that featured Ouimette making incriminating statements. Govt's Objection, p. 14. Thus, even if Bianco testified consistently with her affidavit at trial, a "reasonable factfinder" could have discredited her testimony and found Ouimette guilty beyond a reasonable doubt. Second, while Bianco at one point describes Robert Buehne as an agent for a police detective, she never names any prosecutor or officer of the court as being a participant in this plan or scheme to "frame" Ouimette.[12]

Finally, the purported transcript of an (ambiguously dated) recorded conversation between one Lori Stenopoulous and Bobby Jo Dumont, a Satin Doll employee who testified at trial, is likewise inconclusive. The transcript -- to the extent it is comprehensible -- contains several references to Ms. Dumont being questioned by law-enforcement officials concerning the extortion incident at the Satin Doll Club as well as her statement that, "I said I didn't know nothin' when I got up on the stand." (See Taped Transcription for John Ouimette, entitled Bobby Jo Dumont, February 11 [no year], Exh. B to Ouimette Aff., at 2-3.) There are no references to any officers of the court in this transcript.[13]

---

[12] Both the Calenda and Bianco affidavits allege that Buehne's actions were taken with the knowledge of Robert Lauro, a Providence Police detective. The only other law enforcement official mentioned -- Raymond Mansolillo, who is described as a DEA agent -- is contained in Calenda's unsworn 1996 letter to Attorney O'Brien.

[13] This Court notes that Ouimette's claim based on Dumont's statements has previously been rejected by the Court of Appeals in connection with Ouimette's original §2255 motion. See 2/21/02 Judgment at 1-2.

This Court finds that the affidavits, transcripts and other documents submitted by Ouimette fall short of constituting clear, unequivocal, and convincing evidence of fraud, let alone fraud upon the Court.   As noted above, allegations of mere perjury by witnesses at the instigation of other witnesses or potential witnesses, without direct involvement by officers of the court, are not sufficient to constitute fraud upon the court so as to justify out of time relief.   Nor did they clearly establish Ouimette's innocence.   Rientjes, 71 F.3d at 49.   These submissions are devoid of any mention of the three prosecutors named by Ouimette in his Hazel-Atlas motion.

As also noted above, the affidavits of Ouimette, Barone, and McDonough are clearly insufficient and do not add anything to Ouimette's claim.   Reviewed with the "skepticism" indicated by the First Circuit with respect to witness recantations, Connolly, 504 F.3d at 214, the affidavits of Bianco and Calenda lack reliability and credibility, as does Calenda's unsworn letter.   This is particularly true here, where Ouimette has delayed presenting the recantation statements until long after his conviction became final.[14]   As previously noted by the Court of Appeals, the weight of the evidence against Ouimette, including audio and video recordings of meetings Ouimette had with Calenda and with Bianco and Buenhe and corroborating testimony by other witnesses at trial, was considerable.[15]   See 2/21/02 Judgment (affirming denial of Ouimette's §2255 motion).

---

[14]   While the Supreme Court in Hazel-Atlas noted that the failure to exercise the highest degree of due diligence should not act as a bar to an independent action for fraud on the court, 322 U.S. at 246, it is clear from Ouimette's own affidavit and his other documents that he was aware as early as November 1995 of much of the information he now submits. See Ouimette Aff. at 18 ("I found out two weeks after I was convicted that Paul Calenda's wife had made the two calls trying to warn me to leave town before I got into trouble, she knew they were trying to frame me.") Likewise, Calenda's letter is dated January 15, 1996 – prior to Ouimette's sentencing.

[15]   Video testimony showed that at one meeting Ouimette told Calenda that a $5,000 payment would be satisfactory and that he would ensure that Robert DeLuca would not send anyone else to visit Calenda. Ouimette also described to Calenda the beating of Duxbury by Gellerman. DeLuca, 137 F.3d at 29. During the meeting with Bianco and Buehne, Ouimette told Buehne to tell Calenda that if he did not come up with more money, "it's open season on him." Ouimette also threatened to blow up Calenda's garage and car with a "howitzer" and to break the legs of Calenda's housekeeper. Id. Both Gellerman and Duxbury testified at trial.

In short, Ouimette has not shown clear, unequivocal, and convincing evidence of fraud by officers of the Court so as to constitute "an 'unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter' involving an officer of the court." Rientjes, 71 F.3d at 48 n. 5 (quoting Aoude 892 F.2d at 1118).  As a result, Ouimette's Hazel-Atlas motion – in whatever form it is adjudicated – must be denied.

This Court has considered Ouimette's other arguments in connection with the instant Hazel-Atlas motion and finds them to be without merit.

III.   CONCLUSION

For all of the foregoing reasons, Ouimette's Hazel-Atlas motion is DENIED and DISMISSED.

In addition, in view of the disposition herein, Ouimette's Motion for Status of Document No. 45 and Motion to Expedite Proceedings (Doc. #96), is hereby DENIED as moot.

SO ORDERED:

Mary M. Lisi
Chief United States District Judge

May 6 , 2010

10